## HAXTON v. KANSAS CITY, Appellant.

### Division Two, June 20, 1905.

1. **NEGLIGENCE: Pedestrian: Stepping on Loose Stones.** Where the loose stepping stones from a curbing to a sidewalk to a public street had no appearance of danger and seemed to have been used by the public generally, and the testimony tends to show that they had been laid there as stepping stones for public use at least a year before, plaintiff was not, as a matter of law, guilty of negligence in using them instead of crossing the street at some other point.

2. ————: ————: ————: **Contributory Negligence.** The place where plaintiff fell in crossing the street was the usual and ordinary place for people to cross a public street. At that place were stepping stones from the curbing to the sidewalk which were a prolongation of the crossing. They did not seem dangerous and seemed to have been used by the public generally, but were loose, and when plaintiff stepped on them they gave way and threw her in a hole which was hidden by weeds. In the hole was a gas pipe, and this she struck in the fall, causing the injuries for which she sues. *Held,* that whether she was guilty of contributory negligence in attempting to cross on these stepping stones was a question for the jury, and the facts were sufficient to authorize the jury in finding that she was not guilty of contributory negligence.

3. ————: **Damages: Permanent Injuries.** The instructions need not require the jury to allow plaintiff nothing for future pain and suffering unless her injuries are permanent; where the injuries are such that they are reasonaby certain to continue to cause future pain and anguish, they are proper elements of damages, though not permanent.

4. ———: **Pedestrian: Presumption of Safety.** Where the city has assumed, according to plaintiff's evidence, to construct a crossing of stepping stones from the curbing to the sidewalk, or permitted them to be so used with its acquiescence, and invited the public to use them as a crossing, it is not error to instruct the jury that it was the duty of the city to exercise ordinary care to keep its sidewalks and crossings in a reasonably safe condition for public use, and that plaintiff had a right to presume, in the absence of knowledge to the contrary, that the city had performed that duty. The criticism to the instruction that the court meant to declare as a matter of law that the place where plaintiff was injured came within the terms "sidewalk and crossing," is, therefore, without merit.

5. ———: **Inapplicable Instruction: Obstruction.** An instruction telling the jury that the city has the right to obstruct a sidewalk while making an improvement to the street, correct within itself, should not be given if the dangerous condition existed long before the improvement was begun, and its use by the public was not brought about by the obstruction. And if such an instruction is given, the appellate court will not hold that the jury disregarded it, for it was wholly inapplicable to the case, since the jury must have found that the crossing at the place where the injury occurred was not obstructed by the improvement, and, besides, appellant should not profit by an error invited by itself.

6. **EXCESSIVE VERDICT: $5,000.** A verdict of $5,000 for injuries to the back and for a broken ankle and ruptured ligaments of the ankle of a washer-woman, is not excessive.

7. **CHANGE OF VENUE: No Exception.** Where no exception was saved to the action of the circuit court of Jackson county in granting a change of venue to Benton county instead of to some other county "in the same or next adjoining circuit," and appellant voluntarily entered its appearance in the Benton court and submitted to its jurisdiction without objection, it waived all objection to the change of venue.

Appeal from Benton Circuit Court.—*Hon. W. W. Graves*, Judge.

AFFIRMED.

*R. J. Ingraham, J. G. L. Harvey* and *L. E. Durham* for appellant.

(1) Appellant's demurrer to the evidence should have been sustained. (a) There is no proof that the

place in question was a public street of the city. Downend v. Kansas City, 156 Mo. 60. (b) Even if it was a public street, the undisputed evidence shows that there was a perfectly safe sidewalk and crossing, at the proper and ordinary place, and within a few feet of the place where the plaintiff desired to cross. She voluntarily chose to cross at an irregular place. The city had not put that part of the street into use for pedestrians. Its condition was manifest and spoke for itself. Ely v. City, 81 S. W. 168; Oliver v. Denver, 13 Col. App. 345; Dougherty v. Harshheads, 159 N. Y. 154; Macomber v. Taunton, 100 Mass. 255; Holding v. St. Joseph, 92 Mo. App. 143. (c) Plaintiff was guilty of contributory negligence. Holding v. City, 92 Mo. App. 143; Wheat v. St. Louis, 179 Mo. 572. (2) The court erred in giving instruction 1 for plaintiff. By this instruction, a recovery was permitted for future pain and suffering, without requiring the jury to find the injury to be permanent. And in this respect said instruction is not confined to the evidence in that it alleges injuries, whether set up in the petition or not. 1 Joyce on Damages, par. 245; Smiley v. Railroad, 160 Mo. 629; Girdes v. Iron Co., 124 Mo. 361; Batten v. Iron Co., 102 Mo. App. 285; Albin v. Railroad, 103 Mo. App. 318; Bigelow v. Railroad, 48 Mo. App. 367. (3) Instruction 2, given for plaintiff, was improper. (a) Plaintiff was not injured upon a sidewalk, or crossing. On the contrary, she claimed to have been injured at a point beyond the sidewalk, and not upon the crossing. Therefore, this reference to the duty to keep the sidewalk and crossing in repair was calculated to give the jury the impression that the court, as a matter of law, meant to declare the place where she fell to be within the terms "sidewalk and crossing." It was misleading. There was nothing in the pleadings or evidence to warrant it. Ely v. St. Louis, supra; Stanley v. Railroad, 114 Mo. 606; Hurt v. Railroad, 94 Mo. 255; Arnold v. Ins. Co., 55 Mo. App. 149; Fisher v. Central

Lead Co., 156 Mo. 479.   (b)   The knowledge which
plaintiff confessed she had, of the surroundings, made
all reference to the "right to presume that it was safe"
wholly improper, and   tended to   take away from
the city the right it had to have the jury consider her
knowledge of the surroundings in determining the is-
sue of contributory negligence.   Lynch v. Railroad, 112
Mo. 432; Payne v. Railroad, 129 Mo. 419; Bailey v.
Railroad, 152 Mo. 461; Schepers v. Railroad, 126 Mo.
670; Rapp v. Railroad, 106 Mo. 428; Nixon v. Railroad,
98 Mo. 186; Brannock v. Elmore, 114 Mo. 64.

*Henry J. Latshaw, Jr.*, for respondent.

(1)   The evidence shows conclusively that plaintiff
was crossing at the usual and ordinary place and at
the only crossing there was or ever had been on the
north side of Ninth street, crossing Jefferson.   (2)
That part of the street was in use, and had been for
twenty years for pedestrians, and these very stones
had been laid there as stepping stones for public use
for at least a year.   (3)   Whether or not respondent
was guilty of contributory negligence was, under the
facts in this case, clearly a question for the jury, and
they were properly instructed upon that issue.   That
the place where plaintiff was crossing when she fell
was the usual and ordinary place, and in fact the only
place for people to cross at that point, is clearly estab-
lished.   There is no evidence in this case that plaintiff
could, by the exercise of ordinary care, have discovered
that the hole was there, or that the gas pipe was stick-
ing up from the bottom of said hole, or that the step-
ping stones were insecure.   (4)   It is quite evident that
plaintiff might suffer future pain, say, for months or
for years, on account of said injuries, and still not suf-
fer said pain permanently, viz., during her entire life.
Plaintiff surely, under the law, is not precluded from
recovering from future pain merely because said pain

will not be permanent. (5) Appellant claims that the instruction assumes plaintiff was injured "on a sidewalk and crossing," and that it is therefore misleading. The objection of appellant is not well taken, for the reason that the duty of the city is the same in relation to holes and dangerous places adjacent to and near its sidewalks, streets and crossings as it is in regard to the sidewalks, streets and crossings themselves. Bassett v. St. Joseph, 53 Mo. 290; Kiley v. Kansas City, 87 Mo. 103; Quinlan v. Kansas City, 78 S. W. 660; Grogan v. Foundry Co. and St. Louis, 87 Mo. 321; Frank v. St. Louis, 110 Mo. 516; Wiggins v. St. Louis, 135 Mo. 558; O'Neill v. Kansas City, 77 S. W. 64; Campbell v. City, 78 S. W. 292; Perrette v. Kansas City, 162 Mo. 248.

GANTT, J.—This is an action against Kansas City for damages resulting from personal injuries received by the plaintiff June 19, 1900, by falling into a hole at the northwest corner of Ninth and Jefferson streets in Kansas City, Missouri, and striking the small of her back against the end of an iron gas pipe extending up from the bottom of said hole, and by a severe sprain of her left ankle, by reason of the turning of a stepping stone and the rolling of the same upon her said ankle. The petition charges that the city negligently maintained this hole in said street; that it neglectfully maintained said stepping stones near said hole; that it negligently permitted weeds to grow about that hole and these stones which obscured both, and that it negligently failed to maintain barriers around the hole and stones. There was a prayer for judgment for five thousand dollars for said damages.

The answer of the defendant is a general denial and a plea of contributory negligence. The reply denies all new matter.

On the application of the plaintiff a change of venue was granted on the ground of the undue influence

of the defendant over the minds of the judges of the Jackson County Circuit Court, to Benton county, Missouri. The cause was tried on the 13th of December, 1902, in the Benton County Circuit Court, and a verdict of five thousand dollars rendered in favor of plaintiff. Motions for new trial and in arrest of judgment were filed and overruled, and time given to file a bill of exceptions, and in accordance with the leave granted, a bill of exceptions was filed on the 6th of May, 1902.

The evidence tends to show that the plaintiff is a lady of Welsh descent; she had been married, and had a young son about ten years old, but she was divorced from her husband for his fault previous to the receiving of the injuries for which she sues; she supported herself by taking in washing and kept a few boarders. About seven o'clock in the afternoon of July 19, 1900, plaintiff was sitting on the front porch of her home, 903 Jefferson street, when she saw her young son going north on the west side of Jefferson near Ninth, carrying a basket of clothes, which appeared to be too heavy for him and she started to his assistance. She went north on the east side of Jefferson street, her home being on that side, to the north side of Ninth street, and crossed west over Jefferson street. As plaintiff went to the assistance of her son, she stepped over the curbing on to a space between the sidewalk and the curb on the west side of Jefferson street just north of Ninth street, that is, near the northwest corner of Ninth and Jefferson streets. Jefferson street runs north and south, and Ninth street runs east and west, crossing Jefferson street. In this space there had been some stones which the evidence tends to show had been arranged for stepping stones to allow pedestrians to pass over the curbing to the sidewalk. The plaintiff stepped on one of these stones, which turned with her and threw her on her back, which struck upon a projecting gas pipe which had been left there when the gas post was moved. This space on the sides of these step-

ping stones and at this projecting gas pipe was covered at that time with weeds. The evidence shows that these stones had been arranged for ten months to a year prior to the time plaintiff fell. About five or six months before plaintiff fell, the lamp post had been moved from the place where this gas pipe stuck up to the position it occupied at the time plaintiff fell. At the time plaintiff fell it appears that Jefferson street was being paved by the city with asphaltum, and the crossing had been removed for that purpose. The testimony on behalf of the plaintiff tended to show also that these stepping stones were on a direct line with the end of the sidewalk on the north side of Ninth street and the west side of Jefferson street. The curbing around the hole into which plaintiff fell had been put in by the defendant city through its superintendent of curbing and sidewalks, Thomas F. Callahan, in the year 1892, and was the "regular shoulder four feet corner." At the time plaintiff was injured, both Ninth and Jefferson streets were public, and among the principal thoroughfares of the city, and had been for at least twenty years. Both streets at this point were sidewalked on both sides, and had gas and sewers on them. The principal cable road of Kansas City ran over the hill on Ninth street to the Union Station, and crossed Jefferson street at this corner within a short distance from where plaintiff fell. Jefferson street is the first street on the top of the hill over the incline from the Union Station. When the stepping stone turned with the plaintiff she fell and the stone rolled over on her foot and ankle and her little son was not strong enough to remove it, but a gentleman, who ran to her assistance, removed the stone from her foot and several men then picked her up and carried her in their arms to her home on Jefferson street. Dr. Branaman, who lived near by, was summoned, and testified that he did not remember whether he examined her back or not, but he found her suffering from a dislo-

cated ankle and ruptured ligaments of the left ankle joint; in a few days he brought Dr. Beattie with him, and they together put her foot in a plaster-paris cast. Plaintiff was confined to her house for about four weeks and was compelled to keep the plaster-paris cast on her ankle for three weeks. She testified that she could not go about very much for a couple of months, walked with crutches at first. Dr. Branaman attended her for about a month, then she called in Dr. Jones, and he treated both her ankle and her back. Dr. Jones testified that when he first examined plaintiff's left limb he found it swollen near the ankle, and ankle was sore on pressure, and one bone in the leg diseased, the bone was inflamed with two angry looking red scars about the size of a silver dollar over the bone. He also found pus gathered in several places at or near this point, and abnormally large veins in the same region; that the ankle joint was involved in an inflammatory process; that anchylosis was in progress at the time of the trial. On her back he found an enlargement of the sacrum and pain and tenderness at the sacrum and surrounding parts, to-wit, the lower part of the spine. He testified that an injury or fall would be the natural cause of these conditions, and that these injuries would affect the nervous system, and would naturally produce pains in the back such as plaintiff complained of, and that in a woman of plaintiff's age, this condition was not likely to get any better. Dr. Burnett, who was appointed on the motion of the city by the court to make an examination of plaintiff, did so on December 9th, a few days before the trial. He made a specialty of nervous and mental diseases, and was a professor of the University Medical College of Kansas City. He testified he found Mrs. Haxton in only fair physical condition for a woman of her age, that she complained of pain over what is known as the sacrum, that is, the lower end of the spinal column between the two hips; this pain incapacitated her to such

an extent that she was unable to stoop or rise, or follow her work; she is not able to do the work she once was; but he found no abnormal condition in this area except on the left side of the sacrum, and there it appeared there was some thickness, a little unnatural roughness as compared with the other side. He testified he was unable to find any affection of the nerves at the base of the spinal column. The plaintiff herself testified that the projecting gas pipe struck her right on the back bone; that the pain in her back and foot was so intense she could not move; that her ankle still bothers her, and pains her so she cannot use it like she could before her injury; that her back is so weak, and pains her so much that she cannot wash and do her work like she could before she was hurt; that she has tried numerous jobs to make her living since her injury, and has been obliged on account of her back to give them up, and that while she held different jobs she was able to work only half of the time. On the part of the defense there was evidence that plaintiff's health was not good prior to her injury, but there was nothing in this evidence to indicate that her spine or ankle had given her any trouble before that time. Numerous errors are assigned for which a reversal of the judgment is asked. The instructions will be noted further on in the opinion.

I. Three grounds are urged why a demurrer to the evidence should have been sustained. First, that there was no proof that the place at which plaintiff was injured was in a public street, or thoroughfare of the city. Second, that even if it was a public street, the evidence shows there was a perfectly safe sidewalk and crossing at the proper and ordinary place and within a few feet of the place where the plaintiff desired to cross, and instead of using that plaintiff voluntarily chose to cross at an irregular place which the city had not put in use for pedestrians; and, third, that plaintiff was guilty of contributory negligence which would bar her recovery.

As to the first of these propositions, we think there was ample evidence to show that Jefferson street was a public street and the place at which plaintiff fell was within the lines of that street, and it was the duty of the city to make it reasonably safe for pedestrians' use. We have already noted in the statement that Mr. Callahan, the superintendent of curbing and sidewalks, had placed this curbing on the west side of Jefferson street from Eighth to Ninth streets in the fall of 1892, and at the time this accident or injury occurred to Mrs. Haxton, the street was being paved with concrete preparatory to laying asphaltum thereon. The facts concerning this case distinguish it from Downend v. Kansas City, 156 Mo. 60, and Ely v. St. Louis, 181 Mo. 724. In this case, unlike those, the testimony of policeman Kirk shows Ninth street, where it crosses Jefferson street, was one of the principal thoroughfares of the city, and the same could be said of Jefferson street. We do not deem it necessary to set forth the evidence at length to show that both of these streets were clearly public highways which it was the duty of the city to keep in reasonably safe condition for those traveling over them for business or pleasure.

The next contention is that the demurrer should have been sustained because appellant says there was a perfect sidewalk and crossing at the ordinary place and plaintiff voluntarily chose to cross at an irregular place. This seems to be based upon a question put to the plaintiff and her answer to it as follows: Q. "You could have walked around and stepped upon the sidewalk from the east side, there where people cross the streets?" Ans. "I could, but I did not do it." Clearly counsel meant *north* side instead of *east* side, as there was no possible way of getting to this sidewalk from the east side of any place. Q. "And you could have stepped upon the sidewalk from Ninth street?" Ans. "Yes, I could have gone that way." Q. "But you did not?" Ans. "No." We think it is plain the demurrer

should not have been sustained on this ground, because there was much evidence to show that plaintiff was crossing at the usual and ordinary place and over the crossing that had been used for a long time on the north side of Ninth street crossing Jefferson, and according to plaintiff's testimony her use of the stepping stones was not negligence in the circumstances, as they had no appearance of danger and seemed to have been used by the public generally in passing that way, and the testimony tended to show that these stones had been laid there as stepping stones for public use for at least a year.

And this leads to the next contention that she was guilty of contributory negligence, as a matter of law, in attempting to cross on these stepping stones. Whether or not she was guilty of contributory negligence was under the testimony clearly a question for the jury, and they were instructed upon that issue.

That the place where plaintiff was crossing when she fell was the usual and ordinary place for people to cross, at that point, was supported by the evidence of policeman Kirk, who testified that the stepping stones were right at the crossing and were in direct line with the crossing. He said, "Coming west on Ninth street, a person walking along here would strike these stones going across here between the curbing and this space, these stones look as though they had been put in there as stepping stones to the crossing; that there was a space of about four feet between the sidewalk and the curbing, going west that way, and that there were weeds growing up around these stones; that is the regular way where the people would travel in going from the east side of Jefferson street to the west side of Jefferson street." These facts taken in connection with the testimony tending to show that the point where she fell was not so dangerous as to deter a person of ordinary prudence, and that the hole in which she fell and the gas pipe sticking up from the bottom of said

hole were hidden from view by the weeds, authorized the jury to find that plaintiff was not guilty of contributory negligence in walking upon these stepping stones to reach the sidewalk, and tended to show at least that plaintiff, in the exercise of ordinary care, would not have discovered that the hole was there, or that the stepping stones were insecure, or that the gas pipe was sticking up from the bottom of the hole. We think there was no error in overruling the demurrer to the evidence for either of the reasons urged in its support.

II.    Instruction number one given on behalf of the plaintiff is assailed for the reason that the jury were permitted to take into consideration future pain and suffering without requiring them to find that plaintiff's injuries were *permanent*. This instruction was based upon the medical testimony that the injuries to plaintiff would extend into the future for years and would probably be permanent, and on the question as to what injuries the jury would consider in making up their verdict, the court in instruction numbered three directed them "that if you believe that all or any part of the physical ailments and the consequent pain and suffering which plaintiff alleges she now has, existed in plaintiff before her alleged fall, then for all such pre-existing ailments you can award plaintiff no damages." None of the cases cited by the learned counsel for the city go to the length which they claim. Those authorities hold that the jury may allow for future pain and suffering if the injuries are permanent, but none of them hold that the jury cannot allow for future pain and suffering unless such injuries are permanent; on the contrary, it is well-recognized law that where the injuries are such that they are reasonably certain to continue to cause future pain and anguish, they are proper elements of damages.

III.    Instruction number two for the plaintiff is challenged. It tells the jury that it is the duty of de-

fendant city to exercise ordinary care to keep its sidewalks and crossings in a reasonably safe condition for public travel, "and you are further instructed that plaintiff had a right to presume in the absence of knowledge to the contrary that defendant had performed said duty." The criticism is that plaintiff was not injured upon the sidewalk or crossing, and this reference to the duty to keep the sidewalk and crossing in repair was calculated to impress the jury with the view that the court as a matter of law meant to declare the place where she fell was within the terms "sidewalk and crossing" and was misleading, and that the knowledge which plaintiff confessed she had of the surroundings made all reference to her right to presume that it was safe, improper. The city having assumed according to the evidence of the plaintiff to construct this crossing of stepping stones or permitted them to be so laid with its acquiescence and invited the public to use the same as a crossing, it was entirely proper for the court to give this instruction, and we think there is no merit in the objection to the instruction as far as it told the jury plaintiff had a right to presume it was safe. There was no such knowledge on the part of the plaintiff of any danger in stepping on those stones shown, that would deprive her of the right to this instruction, an instruction that has often been approved by this court under similar facts.

IV. Among other instructions for the defendant, the court gave one numbered ten, in words following: "The court instructs the jury that the defendant city has the right to place obstructions at or within the curb line which marks the boundary between the roadway and the sidewalk, while engaged in improving a street, provided enough sidewalk space is left unobstructed sufficient to accommodate public travel, and if the jury believe from the evidence that the plank sidewalk opposite the point where plaintiff alleges she fell, was of

sufficient width to accommodate public travel at that point and was unobstructed at the time she fell, and that the sidewalk from the east to the west side of Jefferson street was unobstructed, then your verdict must be for the defendant city.''

Counsel for the city insist that as this was the announcement of correct legal principles and as the jury found for plaintiff, they must necessarily have disregarded it and therefore their verdict should be set aside. A further contention is that the court having held this was a proper instruction ought to have sustained a demurrer to the evidence. In a proper case the instruction was well enough, but was somewhat inconsistent with the insistence of counsel for the city, in this court, to-wit, that Jefferson street was not a street. We are of opinion, however, that it has no application to the facts developed in this case. There is no evidence that the stepping stones on which plaintiff was injured were temporary obstructions caused by the improvements of the streets. For a year they had, with the knowledge of the city, been so arranged as to invite the public to use them as a walk, and were not within the line of the improvement then being made to pave the street with asphaltum, but were between the curb and the sidewalk. Moreover the jury evidently found that the cross-walk from the east side of Jefferson street was not ''unobstructed'' and that the stepping stones were unsafe and negligently maintained as a walk. As to the other proposition, that the court should have sustained a demurrer to the evidence, we have already expressed a contrary opinion. Is defendant in a position to complain of the giving of this instruction? We hold not. If it properly construes instruction number ten, then it obtained from the circuit court a ruling too favorable to it. Clearly the jury did not understand that this was a peremptory instruction to find for defendant, and the defendant cannot complain of an error invited

by it and in its favor. [Erickson v. Railroad, 171 Mo. 647.]

V. Complaint is made that the court erred in refusing instruction number fifteen prayed by defendant as follows: "The court instructs the jury that there is *no* evidence in this case of actual notice to any such city official of the alleged defect." Policeman Kirk not only saw and knew of the dangerous condition of this place, but nineteen days before the injury occurred, notified his superiors in the usual way. Obviously it would have been error to have given it. [Franke v. St. Louis, 110 Mo. 524.]

VI. No error was committed in denying instruction number sixteen asked by defendant on the credibility of witnesses. The court fully covered this point in its thirteenth instruction. That instruction goes as far as the courts are justified in going, without invading the province of the jury to weigh and consider the evidence.

VII. Error is also assigned in refusing instruction number seventeen, prayed by the defendant. It was as follows: "The court instructs the jury that if you believe from the evidence that the place where plaintiff alleges she fell was not in the line of the cross-walk from the east side to the west side of Jefferson street and that a person exercising ordinary care and prudence would have avoided the place where plaintiff alleges she fell, then plaintiff cannot recover and your verdict must be for the defendant city."

The court had already given instruction number nine, in the following form: "The court instructs the jury that it is the duty of persons travelling over the streets and sidewalks of the city to use their eyes and other senses to see where they are going and to avoid defects which are obvious or could be discovered by the exercise of ordinary care on their part, and if the jury believe from the evidence that plaintiff did not ex-

ercise ordinary care in stepping on the stones which she alleges caused her fall, but by the exercise of ordinary care could have avoided it or passed over it in safety, then your verdict should be for the defendant city.''

It is apparent, we think, that instruction number nine embodied the proposition for which defendant contends, to-wit, ''that if plaintiff had used her eyes and by the exercise of ordinary care could have avoided going upon the stepping stones she was not entitled to recover.'' But this instruction was not properly modified. It assumes and does not require the jury to find that the place into which plaintiff fell and the stepping stones had the appearance of being dangerous and therefore plaintiff was bound in the exercise of ordinary care to avoid going upon them. The facts in evidence without contradiction disclose that at the time the hole was covered with weeds and the stepping stones bordered by them and there was nothing to indicate to one not accustomed to use this path that it was dangerous. Even if the court had not given instruction number nine which fully guarded the defendant's rights, the evidence did not justify this instruction, nor was there error in refusing to advise the jury that ''if the place where plaintiff alleges she fell, was not in a direct line of the cross-walk from the east side of Jefferson street to the west side thereof'' she could not recover. The whole testimony showed that at the time Jefferson street was being improved, and there was no cross-walk from the east side to the west side of it, and hence the walk on which plaintiff fell could not have been in direct line with such cross-walk which had been removed pending the paving of the street at the time. On the other hand, the only evidence on the subject was that the stepping stones were in the direct line of the sidewalk on the north side of Ninth street at the west side of Jefferson street. Moreover, if, as the testimony all tends to prove, the city had caused these step-

ping stones to be placed there for a crossing and invited the public to use them in passing from the street across the curb to the sidewalk, the mere fact that they were not laid in an exactly direct line with what had previously been a crossing, would not exculpate the city for their negligent setting. This instruction was properly refused.

VIII. The city complains of the amount of the verdict, as excessive. Various witnesses did testify that Mrs. Haxton had poor health before she suffered this fall. It appears she had been afflicted with hemorrhoids and had fainting spells, but it also appears that she was an industrious woman, making her living with the aid of her little boy, by taking in washing prior to the time of her fall. There is no question that by the fall she received an exceedingly painful sprain of the left ankle and that the ligaments thereof were ruptured, and that two physicians, Drs. Beattie and Branaman, found it necessary to put the ankle in a plaster of paris cast for three or four weeks, and Dr. Jones and Dr. Burnett afterwards found this ankle in a deplorable condition, particularly for one whose condition in life required her to stand over a washtub to make her living and to do other work requiring her to stand on her feet. All the physicians agree with our common experience that such a sprain and rupture is more painful and serious than the breaking of a bone, as a fractured bone will unite more readily than a ruptured ligament, especially in the region of the ankle. The physician testified that plaintiff's ankle would never be as good again as it was before the hurt; and that the presence of anchylosis was in progress at the date of the trial. In addition to this the evidence tends to prove that plaintiff's backbone struck the protruding gas pipe when she fell and the evidence tended to establish that she constantly suffered with pains in her back from this cause, and her physician testified that such an injury from such a

cause would affect the nervous system and produce the pains of which plaintiff complained and, considering her age, this condition was not likely to get any better. By reason of her injuries plaintiff was compelled to give up washing and tried various ways of making a living and had been compelled to abandon them or work only half time. The verdict received the approval of the trial judge and the jury. In view of all the evidence we are not authorized to hold that it was so unreasonable and disproportionate to her injuries as to shock the conscience of the court or to appear to be the result of passion, prejudice or mistake, and hence it must stand.

IX.     The sole remaining contention is that the circuit court of Benton county had no jurisdiction to try this cause because the law governing changes of venue from Jackson county requires that they shall be granted to some county in the "same or next adjoining circuit." [R. S. 1899, sec. 822; Laws 1879, p. 82.]

When the change of venue was granted no exception was taken to the action of the circuit court of Jackson county in granting it and no motion to strike it from the Benton docket was entered. Defendant voluntarily entered its appearance in the Benton court and submitted to its jurisdiction without objection of any kind. The circuit court of Benton county was and is a court of general jurisdiction and had jurisdiction of this class of cases and the parties voluntarily submitted themselves to its jurisdiction. By so doing they waived any objection they might have had by reason of the statute governing changes of venue from Jackson county.

This is too well settled to be longer questioned in this State. [State v. Lynn, 169 Mo. 670, 671; State ex rel. v. McKee, 150 Mo. 238; Wright v. Kansas City, 187 Mo. 678.]

One other matter need be mentioned. The circuit court of Benton county permitted a correction of a cler-

ical mistake made by the clerk of Jackson county in certifying the transcript to Benton, by changing the word "right" to "left" in describing the injury to her leg. It is apparent the defendant was neither surprised nor injured by its correction or amendment. We find no reversible error, and the judgment is affirmed.

All concur.