DAN MOULTON, Respondent, v. CITY OF FARGO, a Municipal Corporation, Appellant.

(L.R.A.1918D, 1108, 167 N. W. 717.)

**Free dumping ground — maintained by city — exercising governmental function.**

     1. In maintaining a free dumping ground a city is *held* to be exercising a governmental function.

### On Rehearing.

**Public teams — for hauling refuse — using by individuals — nominal charge for — enterprise not commercialized by.**

     2. The charge of 10 cents per load to those who wish to use the public teams for the purpose of conveying their refuse to a public dump does not in itself commercialize the enterprise so as to make the maintenance of such dump a private or corporate enterprise.

**Public nuisance — offensive odors — smoke or gas — proof of.**

     3. It is not in itself a public nuisance to maintain a place where garbage and refuse is burned, and without proof of offensive odors, smoke, or gas, or similar injuries, and this in a populous district which is affected thereby, or where there is the danger of fire spreading to neighboring property.

**Public dumping ground — public purpose — engaged in public enterprise — negligence of care taker — not liable for.**

     4. Where a city maintains a public dump for a public and not a commercial

---

NOTE.—The question whether the removal of garbage is a public and governmental function within the rule exempting a municipality from liability is considered in notes in 5 L.R.A.(N.S.) 1005; 39 L.R.A.(N.S.) 649; and L.R.A.1918D, 600.

purpose, it is engaged in a public enterprise, and is not liable for the negligence of the care taker thereof in directing persons where to dispose of their refuse.

**Municipal corporation — governmental enterprise — engaged in — public health — safety of property — matters of governmental cognizance — immunity.**

5. The immunity of a municipal corporation on the ground that it is engaged in a governmental enterprise does not alone apply to cases where public health is concerned. Public safety and the safety of the property of the community are just as much matters of governmental cognizance.

**Streets of city — loose papers — scattering upon — prevention of — duty to — public nature.**

6. The prevention of the scattering of loose papers upon the streets and the burning of them in public places in a city, or even the burning of papers and refuse in the furnaces of buildings, which may result in dense smoke, and the carrying through the chimneys burning pieces of papers and the communication of sparks, is a duty which is essentially public in its nature.

**Municipality — public and beneficial work — entering upon — private action — liability — none imposed.**

7. There is no reason why a liability to a private action should be imposed when a municipality voluntarily enters upon a public and beneficial work, and to withhold it when it performs the service under the request of an imperative law.

Opinion filed November 27, 1917.   Rehearing denied May 9, 1918.

Action for personal injuries.

Appeal from the District Court of Cass County, Honorable *A. T. Cole,* Judge.

Judgment for plaintiff. Defendant appeals.

Reversed and action dismissed.

*Carmody, Louden, & Mulready* and *V. R. Lowell,* for respondent.

*Spaulding & Shure,* for appellant.

ROBINSON, J. This is an appeal from a judgment for $500 recovered against the city for injury. The complaint avers that, pursuant to duties by law imposed, the city kept and supervised a dumping ground; that plaintiff hauled to the ground a load of garbage consisting mainly of dry, loose paper, and dumped the same as directed by the city super-

504 NORTH DAKOTA REPORTS

intendent of the ground, and that, when dumping, a smoldering fire flashed up and burned him.

The case presents two questions, namely: (1) Is there evidence to sustain the verdict? (2) Is the city liable for the alleged negligence?

As the evidence shows, by direction of the superintendent the plaintiff drove his load to the south and windward side of the dump, where there was no fire and no sign or indication of fire. There was a smoldering fire 30 or 40 feet to the north, but as a brisk wind blew from the south the smoldering fire was not in the least dangerous and it was not the cause of the injury. The plaintiff had his load about two thirds off, and was in a stooping position when in a twinkling a flame flashed up and burned him. He says: "All at once it suddenly came like an electric flash."

Of course to produce the flame there must have been some adequate cause. There must have been an explosive gas or some material saturated with kerosene or benzin; there must have been some flame or fire such as a burning match or a lighted cigar. The chances are ten to one that such material was in the load of garbage, and that by accident in throwing out the garbage a stray match was ignited. It is certain such an explosion was never caused by the burning of papers or by any smoldering fire, and the inflammable gaseous material which caused the explosion must have been contained in the load. Hence the injury was not caused by the negligence of the city or its superintendent.

In regard to the liability of a city for negligence in the keeping of a dumping ground, the decisions are in conflict. By statute the city has power "to regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage, or any other offensive matter in, and to prevent injury to, any street, avenue, alley or public ground." It may regulate the same by rules and ordinances, and doubtless, to accommodate the public, it may establish and maintain a free dumping ground. That is a matter of discretion, and the better rule is that the city is not liable for negligence in maintaining a free dumping ground for the public good and as a matter of public service and convenience. The rule is that no legal obligation arises from the offer and acceptance of a gift or gratuity. There is reason and wisdom in the adage which forbids the looking of a gift horse in the mouth. When a city goes to the expense of keeping a free dump, it is done either as a governmental duty and function

or as a pure accommodation to the dumpers and the public. It is a mere gratuity and convenience for the benefit of the dumper. He does not have to use it. He may haul his garbage out of the city. Hence, the law does not give an action for negligence in superintending or in failing to superintend a gratuitous dump. A city is under no obligation to provide a dumping place. It may do it and leave the place without any superintendent, or it may employ a superintendent without incurring liability for his absence or mere neglect. The greater power includes the less. By employing a superintendent to aid or direct the dumpers, a city does not insure them against accidents.

Judgment reversed and action dismissed. ·

BRUCE, Ch. J., and CHRISTIANSON and BIRDZELL, JJ. We concur in the reversal of the judgment, but we express no opinion as to the origin of the fire. In our judgment this case is controlled by the case of Montain v. Fargo, 38 N. D. 432, L.R.A.1918C, 600, 166 N. W. 416, Ann. Cas. 1918D, 826.

GRACE, J. I dissent.

### On Rehearing.

BRUCE, Ch. J. In a petition for rehearing and on the reargument held thereon, the plaintiff and respondent has contended that this court erred in maintaining that the case at bar was controlled by the prior decision Montain v. Fargo, 38 N. D. 432, L.R.A.1918C, 600, 166 N. W. 416, Ann. Cas. 1918D, 826. Respondent asserts that "the Montain Case involves the construction of a contract for the removal of kitchen garbage, a notoriously unsanitary commodity, the accumulation of which is notoriously detrimental to health." In it he asserts:

"Public-health agencies are at all times in evidence; an ordinance relating exclusively to the removal and disposition of kitchen garbage, a contract to be performed under the direction and supervision of the commissioner of health, teams, equipment, and men to be acceptable and satisfactory to the health commissioner, the garbage in course of removal under these agencies, on the way at the time to the municipal incinerator,

an instrumentality provided under the health powers of the municipality for the destruction of unhealthful and noxious substances."

"In the case at bar, on the other hand," he maintains that "the city of Fargo was not operating or maintaining an instrumentality designed primarily for the protection of the public health. . . . Any connection between the dumping ground and the question of public health was, at most, secondary and incidental. As a matter of law, the city is charged with the duty of keeping its streets free from obstructions and agencies that interfere with public travel and locomotion. As a matter of municipal pride, it is interested in preventing the deposit on its highways and public thoroughfares of *débris,* offal, dirt, and other offensive matter not necessarily inimical to the public health, but unpleasant to the eye and an obstacle to the free passage of its inhabitants. The authority conferred by law to keep its streets free from obstructions carries with it, under the uniform holding of the courts, the accompanying obligation to do so, or to become liable for any injury resulting from its failure. In the commission system of government which obtains in Fargo, this authority is granted in subdivision 9 of § 3818, Compiled Laws 1913, defining the commissions' general powers as follows:

" 'To regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage or any other offensive matter, in, *and to prevent injury to any street, avenue, alley or public ground.'*

"And in subdivision 5 of the same section, granting the power, among other things, 'to prevent and remove obstructions,' on the streets or other highways or public grounds. The association in subdivision 9, of the power to prevent the deposit of offensive matter with the power to prevent injury to streets and public grounds, shows clearly the legislative intent to provide, primarily, for the protection of the streets and public grounds. It is not a health-protection authority primarily, but a street-protection authority. The health-protection authority, so far as the streets are concerned, is furnished in § 3820, Compiled Laws 1913, empowering the commissioner of health 'to cause the removal of all objects detrimental to health.'

"It was for the purpose of carrying out the authority to keep its streets and public grounds clean and in order that the city established the dump ground in question. At the time the accident to the respondent occurred, it did not use the dump ground for the destruction of unsan-

itary substances. It used its incinerator for that; or if it did not, it ought to have. It used the dump ground to hold the refuse which it had prohibited the public by ordinance appearing in the record from dumping on the streets or public places; first, to shield itself from the liability which might result from an injury through an accumulation on the streets or public places; or, second, to satisfy the civic pride of its inhabitants in clear and unobstructed thoroughfares. Now, both of these purposes and functions were administrative. Both had relation to the care of the streets always held an administrative function. Neither was under the supervision of the state board of health, nor, therefore, under the supervision of the health commissioner."

He cites with much emphasis the case of Denver v. Porter, 61 C. C. A. 168, 126 Fed. 288, in which the court among other things says: "In almost all affairs of purely local concern some indirect relation may be traced to a matter of health, safety, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature, the city cannot escape responsibility for its careful performance because it may in some general way also relate to a function of government."

He also cites the case of Roman v. Leavenworth, 90 Kan. 379, 133 Pac. 551, in which the supreme court of Kansas sustained a judgment against the city of Leavenworth for injuries occasioned to a boy while playing on the city dump by falling into a smoldering fire. He also takes exception to the opinion in calling the dump in question a free dump.

We are satisfied that there is no merit in any of these contentions. The dump was to all intents and purposes a free dump. It is true that, if property owners desired to make use of the municipal teams, a small charge was made. There was nothing in the ordinance, however, which prohibited such persons from using their own teams or from employing others, and there was no charge for the use of the dump itself. It is true that it seems to be a general rule that "a city or town which voluntarily undertakes work of a commercial character from which it seeks to derive revenue or other special advantage is liable like a private employer for the negligence of its servants or agents, who are engaged therein." Haley v. Boston, 191 Mass. 291, 5 L.R.A.(N.S.) 1005, 77 N. E. 888.

It can hardly be said, however, that the maintenance of the dump was a private business enterprise, or that the mere fact that those who used the public teams were required to pay the small amount of 10 cents per load therefor commercialized the whole enterprise. Ibid.

Nor does the fact that the load contained paper as well as manure alter the fact that the maintenance of the dump was a public enterprise. Nor is there any merit in the contention that the business of removing garbage and refuse was merely an administerial duty, which was placed upon the municipality, and that the property owners were required "to bear the heavy expense of loading, transportation, and unloading," and "to aid the city in its administerial supervision of the streets and public places, in promoting the city beautiful, in keeping the highways free from rubbish and obstructions, in escaping the possible liability resulting from such obstructions."

We agree with counsel for appellant that a city cannot maintain a public nuisance, or that which is in a sense a nuisance because it is attractive to children. Roman v. Leavenworth, supra. Here, however, there was no public nuisance proved, nor did the pleading justify any recovery on the theory that any such nuisance was maintained. The action was one for negligence. It is based on the charge that "the superintendent of the dumping ground carelessly and negligently conducted him, the plaintiff, to a particular place upon the said dumping ground, namely, to a point about 100 feet south of the north line and 50 feet east of the west line of the said dumping ground, as indicated by a wire fence which extends all around the same, which had been used as a pit for burning garbage and which the said defendant had carelessly and negligently permitted to smolder and burn beneath the surface in such a manner that the plaintiff in the exercise of due and reasonable care could not, and did not, see the fire or detect danger, and carelessly and negligently directed the said plaintiff to unload the contents of the said wagon at that particular place, without disclosing to him that fire had recently been burning in that pit, and that it was usual for garbage, once set on fire, to burn for a long period of time."

This is clearly a charge of negligence on the part of the superintendent in the conduct of the dump, or, rather in the direction of the person who used the same, and not a charge of maintaining a nuisance. It is

surely not a nuisance in itself to maintain a place where garbage and refuse is burned. Surely without proof of offensive odors or smoke or gases, and this in a populous district which is affected thereby, or the danger of fire spreading to neighboring property, the burning of refuse in a public dump cannot be deemed to be the maintenance of a nuisance of which the public can complain.

The nuisance, if any, was private, and not public; and the plaintiff was only affected thereby on account of the fact that he had resorted to the dump for the purpose of disposing of his refuse. Even this he was not compelled to do, as he could have taken it anywhere else outside of the city limits. The case is one merely of one resorting to a place which the public maintains for the disposal of refuse, and for damages on account of an injury occasioned while on such place by the negligent directions, or failure to direct, of the person in charge thereof.

It is merely the case of one entering upon a public place, which is maintained for a public purpose, and being directed by a care taker to occupy a dangerous position. It is much the same case as where one is directed by a care taker to climb a dangerous staircase in a hospital or a courthouse, or to take a dangerous elevator. There can be no doubt that in maintaining this dump the municipality was in the exercise of a governmental duty. The duty, we believe, was imposed or, at any rate sanctioned, by paragraph 72, § 3831, Compiled Laws 1913, which gives to the city commissioners the power to "adopt such other ordinances not repugnant to the Constitution and the law of the state, as the general welfare of the city may demand." It is not necessary, as counsel for appellant seems to contend, that § 3818, Compiled Laws 1913, which gives to the commissioners the power "to regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage, or any other offensive matter, in, and to prevent any injury to any street, alley, avenue, or public ground," should alone be relied upon.

The load contained both manure and dry loose edgings and scraps of paper, and came from a paper house. This paper was extremely inflammable, and, if burned on city lots, would have been liable to have been blown hither and thither, and to have started other fires, and, even if burned in the furnace of a building, would have been conducive to danger.

It would be a mistake to hold, as counsel for respondent wants us to

hold, that the immunity of a municipal corporation on the ground that: it.is engaged in a governmental function only applies to cases where pub-- lic health is concerned. Public safety and the safety of the lives and the property of the community are just as much of governmental cogniz- ance. We have no objection to the statement which is made in the case of Denver v. Porter, 61 C. C. A. 168, 126 Fed. 288, that "in almost all affairs of purely local concern some indirect relation may be traced to a matter of health, safety, or other subject of governmental cogni-- zance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature, the city cannot escape responsibility for its careful performance because it. may in some general way also relate to a function of government." The prevention, however, of the scattering of loose papers upon the streets. and the burning of them in public places within a city, or, even the burn- ing of papers and refuse in the furnaces of buildings, which may result. in dense smoke, and the carrying through the chimneys burning pieces. of paper, and the communication of sparks, is a matter which is essen- tially public in its nature. 6 McQuillin, Mun. Corp. § 2625.

Nor is it necessary that the duty to control such matters should have been expressly imposed upon the municipality by the statute.

There is no good reason why a liability to a private action should be imposed, when a municipality voluntarily enters upon such a beneficial. work, and to withhold it when it performs the service under the request of an imperative law. Tindley v. Salem, 137 Mass. 171, 50 Am. Rep. 289; 6 McQuillin, Mun. Corp. § 2626.

The maintenance of the dump, indeed, and the ordinance in relation thereto, may have been both for the purpose of the public health, the keeping of the streets clear from refuse, and the protection of the city from fire, smoke, offal, odors, and the disease and injury which arise from rotting and decaying substances.

The case of Snyder v. St. Paul, 51 Minn. 466, 18 L.R.A. 151, 53 N. W. 763, is well worth reading. In it the court, by Mitchell, J., held that the city of St. Paul was not liable for the negligent construction of the entrances to one of the elevator shafts in the City Hall, nor for the negligent conduct of the servant in charge of the elevator in handling the same. Among other things it said: "The common-law rule is that no private action can be maintained against a municipal corporation for

the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no pecuniary profit. As respects what are sometimes called 'quasi municipal corporations,' such as counties, townships, and school districts, this is the rule everywhere, without exception. But as respects what are called 'municipal corporation proper', such as cities and incorporated villages, the general current of the authorities is to the effect that, even in the absence of an express statute, they may be impliedly liable for acts of misfeasance or neglect of duty on the part of its officers and agents, while for the same or a similar wrong there is no such liability resting on quasi municipal corporations. The most noted and familiar instance of this is the different rule applied to towns and counties as respects liability for negligence in not keeping highways in repair, and that applied to incorporated cities for negligence in failing to keep streets in repair. But respecting the principle upon which to rest this distinction, or as to the nature of the duties to which it extends, the courts seem to be much perplexed; and their decisions, often in conflict with each other, leave the subject in some confusion. The ground for the distinction is not to be found in the mere fact that one is created by special charter, while the other is not, for both are alike subdivisions of the state, created for public, although local, governmental purposes. Nor is it to be found in the fact that the one is given greater powers than the other, unless the power is not for public governmental purposes, but to engage in some enterprise of a quasi private nature, from which the municipality will derive a pecuniary benefit in its corporate or proprietary capacity; as, for example, power to build gasworks or waterworks, to furnish gas or water to be sold to consumers, or to build a toll bridge, from each of which the city would derive a revenue. In this class of cases it is generally held that corporations are liable for wrongful or negligent acts, because done in what is termed their 'private' or 'corporate' character, and not in their public capacity as governing agencies, in the discharge of duties imposed for the public or general benefit. But it is also generally held that they are not liable for negligence in the performance of a public, governmental duty imposed upon them for public benefit, and from which the municipality in its corporate or proprietary capacity derives no pecuniary profit. The liability of cities for negligence in not keeping streets in repair would seem to be an exception to this general

rule, which we think the courts would do better to rest either upon certain special considerations of public policy or upon the doctrine of *stare decisis* than to attempt to find some strictly legal principle to justify the distinction. And, as already suggested, as to what are public and governmental duties, and what are private or corporate duties, the courts are not in entire harmony, and their decisions do not furnish a definite line of cleavage between the two." See also Hill v. Boston, 122 Mass. 344, 23 Am. Rep. 332; Dosdall v. Olmsted County, 30 Minn. 96, 44 Am. Rep. 185, 14 N. W. 458; Bryant v. St. Paul, 33 Minn. 289, 52 Am. Rep. 31, 23 N. W. 220; Grube v. St. Paul, 34 Minn. 402, 26 N. W. 228.

The order which was formerly entered is affirmed.

GRACE, J. I dissent.