Genevieve LANGHAMMER, Appellant-Plaintiff,

v.

CITY OF MEXICO, MISSOURI, a Municipal Corporation, Appellant-Defendant.

No. 47128.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 12, 1959.

Van Matre & Van Matre, Lon J. Levvis, Mexico, Mo., for appellant-defendant.

Rendlen & Rendlen, Albert L. Rendlen, Hannibal, Max Oliver, Montgomery City, for respondent-plaintiff.

BARRETT, Commissioner.

In this action by Genevieve Langhammer to recover $10,250 damages from the City of Mexico a jury found the issue of negligent injury in favor of the plaintiff and fixed her damages at $4,000. The trial court

overruled the city's motions for judgment but sustained its motion for a new trial on the specified ground that the court had erred in giving plaintiff's instruction three as to the measure of damages. Since the court was of the view, apparently, that there had been no errors or unfairness as to the essential merits of the case, the court ordered a new trial on the issue of damages only. Both the plaintiff and the defendant filed notices of appeal to this court.

■■ In these circumstances the city's unbriefed, conclusional, jurisdictional statement that the amount "in dispute" exceeds the sum of $7,500 (Const.Mo. Art. 5, Sec. 3, V.A.M.S.) is wholly inadequate and not within either the spirit or purpose of Rule 1.08. See the illustrative note and comment to the amended rule, 42 V.A.M.S.; Jameson v. Fox, 364 Mo. 237, 260 S.W.2d 507, 58 A.L.R.2d 80, and Trokey v. United States Cartridge Co., Mo., 214 S.W.2d 526. The appellant-defendant contends that it is entitled to a directed judgment or to a new trial on all issues, liability as well as the amount of damages to be awarded, regardless of the amount. The plaintiff has filed a notice of appeal but she has not in fact assumed the traditional role of an appellant; while she contends, of course, if instruction three is erroneous, that she is entitled to a new trial on the issue of $10,250 damages only, her final prayer here is that the order granting a new trial be set aside and the $4,000 verdict reinstated. If the latter situation were the only circumstance, the plaintiff alone appealing, it is possible that the amount in dispute would be the award the court set aside and not the total sum sought. Reaves v. Rieger, 360 Mo. 1091, 232 S.W.2d 500; State ex rel. Long v. Ellison, 272 Mo. 571, 199 S.W. 984. In the cases in which sums within this court's jurisdiction have been sought initially and there were verdicts for lesser sums and new trials were either denied or granted and either plaintiffs or defendants appealed the test of this court's jurisdiction, absent exceptional circumstances

(such as the vexing problems involving counterclaims, Jameson v. Fox, supra), has been the difference between the amount asked in the petition and the amount of the verdict in the trial court, even though the smaller verdicts were reinstated in final disposition of the appeals. Glore v. Bone, Mo., 324 S.W.2d 633; Vogrin v. Forum Cafeterias of America, Mo.App., 301 S.W. 2d 406; Vogrin v. Forum Cafeterias of America, Mo., 308 S.W.2d 617; Sofian v. Douglas, 324 Mo. 258, 23 S.W.2d 126; Jones v. Allred, Mo.App., 298 S.W.2d 525. The difference in the sum sought and the sum recovered but set aside in this case, $10,250 and $4,000, is less than this court's monetary jurisdiction and if that test alone governs this court would not have jurisdiction of the appeal. In other cases, however, where the smaller awards have been set aside at the instance of plaintiffs and defendants have appealed it has been said and the determinative test has been that the effect of the trial courts' orders was "to reinstate his (plaintiff's) claim for the full amount * * * as a pending cause of action," hence the amount "in dispute" and our jurisdiction was determined by the prayer of the petition. Mosley v. St. Louis Public Service Co., Mo., 301 S.W.2d 797; Stein v. Baskowitz, Mo.App., 157 S.W.2d 807; Harris v. Rowden, Mo., 305 S.W.2d 25; Harmon v. Foster, Mo.App., 297 S. W.2d 783; Hoefel v. Hammel, Mo.App., 228 S.W.2d 402. The only difference in these latter cases and this case is that the smaller award here was set aside at the behest of the defendant rather than upon the initiative of the plaintiff, but if the basic test is valid the original claim has been reinstated and the amount in dispute is a sum presently within this court's jurisdiction.

Mrs. Langhammer was injured on September 30, 1952, when her husband drove the family automobile to the city dump for the purpose of disposing of refuse. The allegation of her petition was that in connection with the operation and maintenance of the dump the city "constructed and

maintained certain public ways and streets within the limits of the dumping grounds," that the unguarded ways were negligently maintained with burning coals beneath their surface so that when the plaintiff walked towards the dump to dispose of her refuse the surface of the road gave way and she was precipitated into the glowing embers beneath. · The city contends that its motions for judgment should have been sustained, that the court erroneously refused its proffered instruction and in any event that it is entitled to a new trial on all issues because the plaintiff's instruction hypothesizing her theory of recovery was erroneous in certain particulars. It is not necessary to consider each of these claims separately and in detail; essentially they are all a part of the city's basic claim that Mrs. Langhammer was injured "on the dump area proper," the maintenance of which was a "governmental function" for which there is no tort liability on the part of the city. Annotations 63 A.L.R. 332; 156 A.L.R. 714; 52 A.L.R.2d 1134; 56 A.L.R.2d 1415; 63 C.J.S. Municipal Corporations § 910, p. 325; 18 McQuillin, Municipal Corporations, Sec. 53.46, p. 263. Furthermore, it is not necessary to consider the rationale and soundness of the city's immunity (Prosser, Torts, Sec. 109, p. 774; 2 Harper & James, Torts, Secs. 29.3, 29.6, pp. 1610, 1619; 38 Am.Jur., Sec. 614, p. 311), nor is it necessary to consider and distinguish the cited cases from other jurisdictions, the validity and applicability of the doctrine, in general, is assumed. It is sufficient to note in passing that some of the cited cases involved the problems of eminent domain, some were concerned with the attractive nuisance doctrine or children playing on dumps, in none of the cases were the courts concerned with the additional factor of the maintenance of ways on or in or around city maintained dumps. Illustrative of the general rule are the following so-called leading cases: Bruce v. Kansas City, 128 Kan. 13, 276 P. 284, 63 A.L.R. 325; Moulton v. City of Fargo, 39 N.D. 502, 167 N.W. 717, L.R.A. 1918D, 1108; Flamingo v. City of Waukesha, 262 Wis. 219, 55 N.W.2d 24; Patrick v. City of Bellevue, 164 Neb. 196, 82 N.W. 2d 274. Likewise, cases of injuries by city operated garbage wagons and street cleaning departments while on public thoroughfares only serve to illustrate the general rule. Such are the cases of Behrmann v. City of St. Louis, 273 Mo. 578, 201 S.W. 547, and Cassidy v. City of St. Joseph, 247 Mo. 197, 152 S.W. 306.

As to the fact of ways in, on, or around the dump the city takes the position, as stated, that Mrs. Langhammer was injured "on the dump area proper," that if vehicles bearing trash "drove on and over more or less tire track marked 'roadways' existing on the surface of the dumping area proper" the fact would not change the rule with respect to the city's immunity in maintaining the dump. To summarize, briefly, this is the city's position and the essence of its claim: "It, therefore, follows that the City of Mexico, in providing a City dump for the use of the public and in keeping the top of the dump smooth so that vehicles and pedestrians could go thereon to the end that the very purposes of the dump be fulfilled is under no obligation to account to any private person for the manner in which the aforesaid governmental duty or function is performed. * * * And this is true whether the injured person claims to have received his hurt on that portion of the dumping area unmarked by automobile tracks or human foot, or whether the situs of the injury be the pathway marked out by the tires of motor vehicles driven in and upon the dump area to discharge their cargo. * * * Hence any evidence in this case to the effect that cinders, bricks, mortar and cement brought out to the City dump were spread over the top of the surface thereof would have no effect other than to show an effort on the part of the City to keep the dumping ground itself in condition for use at all times under all conditions of weather."

■ The city's argument and its fear of chaos and confusion with respect to its liability overlooks the fact that it may often

perform dual functions or act in overlapping capacities, for one of which there may be immunity from liability while if injury results from the other there may be no immunity. Thus, where there was leakage of water from a city hydrant into the plaintiff's basement and the city water department was operated "as a commercial enterprise" and also for fire protection and cleaning streets and the hydrant may have been left open by a water department employee, the court quoted approvingly from Lober v. Kansas City, Mo., 74 S.W.2d 815: "where a city owns and operates a water system for the dual purpose of supplying its inhabitants with water for revenue, a proprietary purpose, and also for the prevention of fires and for keeping the city sanitary and healthful, a governmental purpose, then it is the duty of the city to keep the same as a whole in repair and free from danger to others, and, if damage is done by defects in or lack of repair of the water mains or other appliances used concurrently in both capacities, then the city is liable." Koch Bros. Bag Co. v. Kansas City, Mo., 315 S.W.2d 743, 746. The doctrine of these cases was applied to a "well worn path" (proprietary function) used by persons going to and from a city operated mineral water health resort (assumed to be a governmental function) in Gelhot v. City of Excelsior Springs, Mo.App., 277 S.W.2d 650. See also Sprague v. City of St. Louis, 251 Mo. 624, 158 S.W. 16.

In this connection, while there is no duty on a city to maintain in reasonable safety portions of a street outside or beyond the portion set aside for travel (Hauck v. Kansas City Public Service Co., 239 Mo. App. 1092, 200 S.W.2d 608), "street" is a generic term (64 C.J.S. Municipal Corporations § 1653, p. 22) and, ordinarily, means a "public way," or, as one dictionary definition has it, "way" is "a course from one place to another." Webster's New International Dictionary. Whether a city has devoted a "way" to public use and travel may be shown, of course, circumstantially (Curran v. City of St. Joseph, 264 Mo.

656, 175 S.W. 584) and when a city devotes a walk or a way to public use, however they may have come into existence, it assumes also the duty of reasonably safe maintenance. Haxton v. Kansas City, 190 Mo. 53, 88 S.W. 714; Proctor v. Poplar Bluff, Mo.App., 184 S.W. 123; Golden v. City of Clinton, 54 Mo.App. 100; Gray v. City of Hannibal, Mo.App., 29 S.W.2d 710.

Since 1928 the City of Mexico has owned a 105-acre tract of land adjacent to its northeast limits known as "the city farm." The city maintains a baseball field, together with a grandstand and a well, a sewage disposal plant, a dog pound, a garbage disposal and a city dump on the farm. It is not necessary to describe in detail this unexceptional common city dump, its maintenance, use and growth; in 1952 the dumping area proper extended over approximately three acres and at the time of trial covered about five acres. Route "J," an extension of a city street, runs in a northerly direction past the city farm and "leading off" from Route "J" there is a city maintained roadway into the 105-acre tract. Just beyond the baseball field the roadway "forks" to the right, past the caretaker's house and into the dumping area. There are no formally designed streets in the dumping area proper, but around the perimeter the city has frequently used a bulldozer to keep the approach to the dumping area level and cinders, rocks and gravel have been graded into the level areas. Vehicles traveling in and out of the area, sometimes as many as eighty-five in a day, have made well-defined paths or ways called "loops" or "circles" around the dump proper. But again it is not necessary to detail the evidence, it is sufficient to say that the plaintiff's proof supports the inference and finding that the city so operated the dump that it created the "loops" and "circles" as well as the roadway past the caretaker's house and that they have been used by the public for many years. The Langhammer automobile was "about two-thirds of the way down the road to the dump," at a point where the level-surfaced area was about

thirty feet wide, some distance from the actual trash area, when the crust of the surface gave way. In these circumstances a jury could reasonably find that the "circles," "loops" and leveled areas constituted a city maintained "way" with consequent liability for their negligent maintenance even though they came into existence and were maintained as a part of the city's exercise of the governmental function of operating a city dump. Ray v. City of St. Paul, 40 Minn. 458, 42 N.W. 297; Nuthals v. City of Green Bay, 162 Wis. 434, 156 N. W. 472; Haxton v. Kansas City, supra; Proctor v. Poplar Bluff, supra; Golden v. City of Clinton, supra. The consequence is that upon the essential merits of its appeal the trial court appropriately denied the city's motions for judgment, nor did the court err in giving plaintiff's instruction one or in refusing to give the city's instruction D-3.

■ The instruction on the measure of damages was erroneous (Petty v. Henroid, Mo., 313 S.W.2d 688), the plaintiff tacitly concedes the fact; and since the only error in the trial of the case concerned that issue, there being no passion or prejudice or misconduct on the part of the jury and the issues being severable, it may not be said that the trial court abused its discretion or for any validly demonstrable reason that the city is entitled to a new trial on all issues, liability as well as damages. V.A.M.S. § 510.330; Vinson v. East Texas Motor Freight Lines, Mo., 280 S.W.2d 124; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73; Williams v. Kansas City, Mo., 274 S. W.2d 261; 66 C.J.S. New Trial § 11, p. 87; 39 Am.Jur., Sec. 24, p. 47. Accordingly, the order and judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.