JENNIE SNIDER *vs.* CITY OF ST. PAUL.

Argued Nov. 11, 1892.   Decided Dec. 2, 1892.

**No Private Action Lies for the Negligence of Public Governmental Officers.**

The duty of providing and maintaining a city hall for the use of the city officers is a public and governmental use, for the negligence of its agents or servants in the discharge of which the city of St. Paul is not liable in a private action.

Appeal by plaintiff, Jennie Snider, from an order of the District Court of Ramsey County, *Kelly,* J., made May 14, 1892, overruling her demurrer to the answer of the City of St. Paul.

By her complaint the plaintiff stated that she was on November 3, 1891, at 5 P. M., descending in one of the elevator cabs from the fourth to the first floor of the Court House and City Hall building in St. Paul. When the servant opened the door for her exit, the floor of the cab was six inches lower than the first floor of the building and she stubbed her foot and fell out onto the floor. At the same time the servant negligently raised the cab the six inches and caught her foot between the floor of the building and the floor of the cab and crushed it, doing her great personal injury. She asked judgment for $2,000 damages.

The defendant, the City of St. Paul, answered that the building was erected and maintained under the provisions of Sp. Laws 1881, ch. 376; Sp. Laws 1883, ch. 102; Sp. Laws 1885, ch. 146; Sp. Laws 1887, ch. 381; Sp. Laws 1889, ch. 64, and of Sp. Laws 1889,

ch. 350. That it was commenced in 1884 and completed in 1890. That the building and block twenty (20) of St. Paul Proper on which it stands have ever since been in the exclusive charge of a joint committee of seven, (7,) appointed as provided by Sp. Laws 1889, ch. 64. That this committee appoints the custodian and all the servants, including the persons operating the elevators, and that the city has no authority or control over them, and is not responsible for their negligence.

To this answer the plaintiff demurred, on the ground that it did not state facts constituting a defense. The demurrer was overruled, the court saying: "This action was based on the alleged negligence of the person operating the elevator at the time of the accident. For such negligence, if he was in fact the city's servant, the city is not liable unless made so by the statute; or unless it is rendered liable by reason of some duty imposed; or by reason of some special benefit received by it as a corporation. The laws nowhere charge upon the city such liability, nor do they impose a duty upon the city from which such liability necessarily arises. The city, as a corporation, distinct from its public character as part of the state government, derives no such special advantage or benefit from the use of the building as will legally charge it with liability. It does not receive rentals of any kind from the builing. The care of the building on the other hand involves a large and constant outlay. The fact that the city holds title to an undivided half of the realty and occupies portions of the building with its own public offices does not alter the situation. The city in this matter is an agent of the sovereign power, the state. And for the proper performance of those duties it is alone answerable to the general public."

*B. H. Schriber,* for appellant.

Duties conferred upon a municipality as a convenient mode of exercising a function of government, have been held to be public, and the municipality not liable for misfeasance. *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Bryant* v. *City of St. Paul,* 33 Minn. 289; *Grube* v. *City of St. Paul,* 34 Minn. 402.

For negligence in the performance of duties, private or ministerial

in their nature and character, the municipality is held liable. The rights upon which these duties depend being proprietary. The care and maintenance of public streets. *Cleveland* v. *City of St. Paul*, 18 Minn. 279, (Gil. 255;) *Lindholm* v. *City of St. Paul*, 19 Minn. 245, (Gil. 204;) *Kobs* v. *City of Minneapolis*, 22 Minn. 159; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Estelle* v. *Village of Lake Crystal*, 27 Minn. 243; *Dyer* v. *City of St. Paul*, 27 Minn. 457; *Treise* v. *City of St. Paul*, 36 Minn. 526; *Hewison* v. *City of New Haven*, 37 Conn. 475; *Requa* v. *City of Rochester*, 45 N. Y. 129. The construction of public sewers. *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463; *O'Brien* v. *City of St. Paul*, 18 Minn. 176, (Gil. 163;) *Simmer* v. *City of St. Paul*, 23 Minn. 408; *Pye* v. *City of Mankato*, 36 Minn. 373; *McClure* v. *City of Red Wing*, 28 Minn. 186; *Lloyd* v. *Mayor, etc.*, 5 N. Y. 369 The construction and maintenance of sidewalks. *City of St. Paul* v. *Kuby*, 8 Minn. 154, (Gil. 125;) *Davenport* v. *Ruckman*, 37 N. Y. 568. The building of an aqueduct for the purpose of furnishing a supply of pure water. *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Wilkins* v. *Village of Rutland*, 61 Vt. 336. The building of a bridge. *People* v. *Kelly*, 76 N. Y. 475. The keeping of a public dock in a safe condition. *Kennedy* v. *Mayor, etc.*, 73 N. Y. 365. The deepening of a canal. *City of Chicago* v. *Joney*, 60 Ill. 383. The construction and maintenance of a city hall building. *City of Chicago* v. *Dermody*, 61 Ill. 431; *McCaughey* v. *Tripp*, 12 R. I. 449. The providing of light for corporate conveniences. *San Francisco Gas Co.* v. *San Francisco*, 9 Cal. 453. The maintaining of a public park. *Board of Park Comrs.* v. *Common Council*, 28 Mich. 228.

The distinction between public or sovereign and private ministerial or proprietary duties is stated in *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Eastman* v. *Meredith*, 36 N. H. 284; *Hill* v. *Boston*, 122 Mass. 344; *Carrington* v. *City of St. Louis*, 89 Mo. 208; *Rowland* v. *Kalamazoo*, etc., 49 Mich. 553.

A public duty is a political duty which the municipality owes to the state, the sovereignty which created it. When a public duty is imposed no assent on the part of the corporation is necessary. The legislative grant by its own force imposes upon the municipality the

obligation to perform that duty. A private duty is a proprietary duty which the municipality owes to the citizens who compose it, and who sustain towards it a position analogous to the stockholders in a private corporation. The performance of a private duty cannot be imposed upon the municipality without its assent. The construction and maintenance of the Court House and City Hall building were not undertaken by the City of St. Paul in its sovereign capacity, but in its private corporate proprietary capacity. The City of St. Paul owed to the State of Minnesota no duty to build a city hall. The state has no interest in the maintenance of the building. Nor could it compel the city to erect the building without its assent. Then, the erection and maintenance of the building is not a public duty.

The joint commission charged with the immediate superintendence, custody and control of the building stand in the relation of agents of the city, deputed by it and its cotenant to perform that duty. *Walsh* v. *Mayor, etc.*, 107 N. Y. 220.

It can be no ground of defense that the cotenant, the County of Ramsey, is not joined and made a party defendant. While the law permits all the wrongdoers to be proceeded against jointly, it also leaves the party injured at liberty to pursue any one of them severally.

*Dan W. Lawler, J. C. Michael* and *Davis, Kellogg & Severance,* for respondent.

The city is not liable for negligence in the performance of a governmental duty. There is much confusion in the authorities upon the subject of the liability of municipal corporations for the negligence of their officers, and it is only by adhering to well-defined principles that a satisfactory solution can be reached. Where a city or county is in the exercise of governmental functions, solely for public and governmental purposes as distinguished from municipal duties or quasi municipal duties, it is not liable. *Curran* v. *Boston,* 151 Mass. 505; *Hill* v. *Boston,* 122 Mass. 344; *La Clef* v. *City of Concordia,* 41 Kan. 323; *Wixon* v. *City of Newport,* 13 R. I. 454; *Oliver* v. *Worcester,* 102 Mass. 489; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Moffitt* v. *City of Asheville,* 103 N. C. 237; *Lindley* v. *Polk Co.,*

84 Iowa, ——; *Steele* v. *Boston*, 128 Mass. 583; *Eastman* v. *Meredith*, 36. N. H. 284; *Bryant* v. *City of St. Paul*, 33 Minn. 286; *Grube* v. *City of St. Paul*, 34 Minn. 402.

This building was erected by a special commission appointed by the District Court, and is under the control of the Court House committee appointed by virtue of Sp. Laws 1889, ch. 64, which is a joint city and county committee. This relieves the city from responsibility, because they are not officers or agents of the city over whom the city has control.

MITCHELL, J. The complaint alleges that the city of St. Paul and the county of Ramsey owned and possessed, as tenants in common, a building known as the "Court House and City Hall;" that they negligently constructed the entrance to one of the elevator shafts in an unsafe manner; also that their servant in charge of the elevator handled it negligently, whereby the plaintiff was injured.

As one of its defenses, the city pleaded the various statutes regulating the construction, custody, and use of the building, particularly Sp. Laws 1881, c. 376, and Sp. Laws 1889, c. 64.

Briefly stated, the act of 1881 created a special courthouse commission, consisting of the mayor of the city of St. Paul (who was *ex officio* a member) and five other persons, to be appointed by the judges of the district court of Ramsey county. This commission was to prepare plans for a building for the use of the city and county "for a city hall and county courthouse, and for offices for the city and county officers, and such other *public* uses as may be deemed expedient," and submit the same, together with an estimate of the cost, to the board of county commissioners and the common council of the city for their approval. Upon their approval of the plans the commission was to proceed and construct the building, which was to be paid for out of the proceeds of a fund called "the courthouse and city hall building fund," which was to be raised by the issue and sale of bonds of the city and of the county. The act further provided that the city and county "shall hold the land occupied and needed for said building, together with the building which may be erected thereon, in common, and for the *public* uses aforesaid."

The act of 1889 provided that when completed the building should be placed in charge of a committee of seven, to be appointed as follows: Three annually by the president of the common council, and three annually by the chairman of the board of county commissioners; and that the mayor of the city should be *ex officio* a member and the chairman of the committee. This committee was to have entire charge of the building, with power to appoint such janitor, custodian, and other employes as they should deem necessary for the proper care and management of the building. The answer also alleges that the city has never had any control over either the construction or custody of the building, which have been entirely under the direction and control of the courthouse commission and committee referred to. The court overruled a demurrer to this defense, placing its decision on two general grounds: *First,* that the special court house commission which constructed the building, and the committee which has charge of it, were independent bodies, and not the agents or servants of the city, and hence that the city was not liable for their negligence; *second,* that even if the city had controlled the construction and custody of the building, it would, in so doing, have been performing merely a governmental duty for the benefit of the public, for any negligence in the performance of which no private action would lie. The decision might perhaps be sustained on either ground, but, as we are clearly of opinion that the second is well taken, it is unnecessary to consider the first.

The common-law rule is that no private action can be maintained against a municipal corporation for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no pecuniary profit. As respects what are sometimes called "*quasi* municipal corporations," such as counties, townships, and school districts, this is the rule everywhere, without exception.

But as respects what are called "municipal corporations proper," such as cities and incorporated villages, the general current of the authorities is to the effect that, even in the absence of an express statute, they may be impliedly liable for acts of misfeasance or neglect of duty on the part of its officers and agents, while for the same

or a similar wrong there is no such liability resting on *quasi* municipal corporations.   The most noted and familiar instance of this is the different rule applied to towns and counties as respects liability for negligence in not keeping highways in repair, and that applied to incorporated cities for negligence in failing to keep streets in repair.

But respecting the principle upon which to rest this distinction, or as to the nature of the duties to which it extends, the courts seem to be much perplexed, and their decisions, often in conflict with each other, leave the subject in some confusion.   The ground for the distinction is not to be found in the mere fact that one is created by special charter, while the other is not, for both are alike subdivisions of the state, created for public, although local, governmental purposes.   Nor is it to be found in the fact that the one is given greater powers than the other, unless the power is, not for public governmental purposes, but to engage in some enterprise of a *quasi* private nature, from which the municipality will derive a pecuniary benefit in its corporate or proprietary capacity ; as, for example, power to build gasworks or waterworks, to furnish gas or water to be sold to consumers, or to build a toll bridge, from each of which the city would derive a revenue.   In this class of cases it is generally held that corporations are liable for wrongful or negligent acts, because done in what is termed their "private" or "corporate" character, and not in their public capacity as governing agencies, in the discharge of duties imposed for the public or general benefit.

But it is also generally held that they are not liable for negligence in the performance of a public, governmental duty imposed upon them for public/benefit, and from which the municipality in its corporate or proprietary capacity derives no pecuniary profit.   The liabilities of cities for negligence in not keeping streets in repair would seem to be an exception to this general rule, which we think the courts would do better to rest either upon certain special considerations of public policy or upon the doctrine of *stare decisis* than to attempt to find some strictly legal principle to justify the distinction.

And, as already suggested, as to what are public and governmental duties and what are private or corporate duties the courts

are not in entire harmony, and their decisions do not furnish a definite line of cleavage between the two. Nor shall we attempt to fix any such line of universal application. For a quite full discussion of the subject, see Dill. Mun. Corp. ch. 23; and for an exhaustive review of the authorities, see *Hill* v. *Boston*, 122 Mass. 344.

In *Dosdall* v. *County of Olmsted*, 30 Minn. 96, (14 N. W. Rep. 458,) we held that a county is not liable for the negligence of its board of county commissioners in failing to repair a courthouse, the duty of maintaining a courthouse being a public one, and for a wholly public purpose.

In *Brya..t* v. *City of St. Paul*, 33 Minn. 289, (23 N. W. Rep. 220,) we held that the city was not liable for the negligence of the board of health in the discharge of its duties, the same being public and governmental, and not corporate, in their character. And, for a like reason, in *Grube* v. *City of St. Paul*, 34 Minn. 402, (26 N. W. Rep. 228,) we held that the city was not liable for the negligent acts of members of its fire department. We fail to discover any distinction in the character in this respect of the duty performed by the city in maintaining a board of health, a fire department, or a police department, and that performed in providing and maintaining a city hall for the use of the public officers of the city. The city, in its private or corporate capacity, derives no more pecuniary benefit from the one than it does from the others, and in each case alike the purpose is a public and governmental one. The duty which a city performs in providing a city hall for the use of the public officers of the city is exactly the same in its nature as that performed by a county in providing a courthouse for the use of the county officers. The inconsistency of holding that the county of Ramsey is not liable, (as must be, under the Dosdall Case,) but that the city is, would be forcibly illustrated by the special facts of this case. Our conclusion is that the city is not liable.

Order affirmed.

(Opinion published 53 N. W. Rep. 763.)