INGA ANDERSON, Appellant, v. THE BOARD OF EDUCA-
TION OF THE CITY OF FARGO, a Body Corporate, Re-
spondent.

(190 N. W. 807.)

### Statement of facts.

1. Plaintiff brought an action against the defendant charging it in her com-
plaint with negligence in establishing and maintaining upon its school play-
grounds, certain apparatus, consisting of several heavy swings and chutes,
more particularly described in the complaint, and in appropriate language
alleged such apparatus to be a nuisance; and further alleging that her son,
while on the school playgrounds, by reason of such negligence was injured and
killed. She claimed damages in the sum of $25,000, and, in addition thereto,
$200 to cover burial expenses of the boy and for physician's fees.

### Ruling of court on demurrer to complaint.

2. The defendant demurred to the complaint, upon the grounds that it did
not state sufficient facts to constitute a cause of action, and the trial court
made an order sustaining the demurrer, from which plaintiff appealed.

### Schools and school districts — board of education of the city of Fargo held not liable for death of pupil struck by playground apparatus installed in governmental capacity.

3. The order of the trial court was proper, in that the defendant in providing
such swings and chutes and apparatus in question for the use of the schools,
was acting in a governmental capacity, and therefore, was not subject to a
suit, either in an action for damages or otherwise.

Opinion filed November 2, 1922.

Schools and School Districts, 35 Cyc. p. 971 n. 78; p. 972 n. 82, 87.

An appeal from the District Court of Cass County, *A. T. Cole,* J.
Order affirmed.

*Taylor Crum* (*Aubrey Lawrence,* of counsel), for appellant.

*Spalding & Shure,* for respondent.

GRACE, J. Plaintiff appeals from an order sustaining a demurrer
to the complaint. The action is one by plaintiff, a widow, against
defendant to recover damages on account of the death of her son, a boy
thirteen years of age, alleged to have been caused by the negligence of
the defendant in the construction and maintenance upon a certain school

Note.—Authorities discussing the question of liability of school district, munic-
ipal corporation, or school board for injury to pupil, are collated in notes in
9 A.L.R. 911; 14 A.L.R. 1392; 21 A.L.R. 1328; 24 A.L.R. 1070; 24 R. C. L. 604; 3
R. C. L. Supp. 1377; 4 R. C. L. Supp. 1547; 5 R. C. L. Supp. 1292.

playground, certain apparatus, later herein more fully described, by which in the circumstances hereinafter mentioned, the boy was struck in the head and killed.

The principal allegations of the complaint are in substance as follows: That the defendant is a body corporate by virtue of a special law in full force and effect, to wit: An act approved March 4th, 1885, entitled An Act To Amend an Act Providing a Board of Education for the City of Fargo and Regulating the Management of the Public Schools Therein. The amendment, which amends and reinacts § 14 of the act, and repeals § 24 thereof is also pleaded. It appears from the complaint that the defendant organized its board of education under the act and has conducted the public schools of Fargo under and by virtue of the act and amendments thereto; that defendant has possession and control of block 3, Darling's addition to the city of Fargo, upon which there has been, and now is, a certain public school building, known as "Aggasiz School;" that at all times during the year 1920 and since, the control and possession of that public schoolhouse, school site, all of block 3 and all of the furniture, books, apparatus, and all appurtenances thereunto, belonging or in anywise appertaining, are and have been in the possession and under the control of the defendant, through its officers, agents and servants.

That upon the west side of the school building and within block 3, there is a plot of ground which is and was at all times hereinafter mentioned a public resort and public school playground, used and frequented and permitted by defendant to be used and frequented by more than five hundred children, ranging from six to fifteen years of age; that the duties of the defendant as to said public resort and public school playgrounds became and was a matter of public and general concern; that upon said public resort and public school playgrounds, the defendant, by and through its officers, agents, and servants, wilfully and negligently and by reason of carelessness, negligence, default, and wrongful acts of its said officers, agents, and servants, and for want of due attention to its duties, erected and suffered to be erected, and suffered and permitted to remain for several weeks to the said first day of December A. D. 1920, upon said public resort and public school playgrounds, and in a public and notorious manner, two chutes or inclined troughs, the summits of which were and are eight or more feet in height, and accessi-

ble to children by means of iron ladders, from which said summits the said chutes or inclined troughs sloped toward the west at a steep grade to the ground; that a few feet in a westerly direction from the chutes the defendant, acting as aforesaid, through its officers, agents, and servants, publicly and notoriously erected and allowed to be erected, and suffered and permitted to remain for several weeks prior to the first day of December 1920, several series of heavy swings, the same being contrivances and apparatus adapted for people to swing upon, to and fro, and were constructed of wood and iron, and suspended from poles or timbers which were fastened or attached to the tops of posts or poles more than twelve feet in height, with heavy wooden iron bound, or mounted plank seats, suspended by heavy iron chains, attached to said poles or timbers, which said poles or timbers were more than twelve feet from the ground; that said swings when in operation, swing from east to west and from west to east, were wholly unguarded or superintended by any teacher or other adult person; and were so constructed, located, and unprotected by any fence or barrier whatsoever, and without any mattress or netting thereunder.

That said apparatus consisting of said chutes and swings was not a part of the original plan of said public school building or of said public resort and public school playgrounds; and was entirely foreign to the original plan provided for, accepted and used in building said public schoolhouse and in laying out the public resort and public playgrounds and that in the erection and maintenance of such apparatus, there was no connection whatever with the original plans in the adoption of which the defendant may have acted in a discretionary or governmental capacity in the performance of any duty enjoined by law; that said chutes and swings were by the neglect or by the positive act and permission of the defendant, through its officers, agents, and servants, located and constructed or permitted to be located and constructed and permitted for several weeks to remain, in such manner as to constitute an eminently dangerous, constant, continuous, and, as to children, an attractive, enticing, inexcusable, and alluring public nuisance; which danger was patent and obviously apparent to any adult person of ordinary intelligence and caution; that the defendants by and through its officers, agents, and servants, did by locating, erecting, and maintaining and by permitting said apparatus to be located, erected, and maintained,

as aforesaid perform and suffered to be performed, a wilful malfeasance; and did so wilfully, carelessly, and negligently permit said chutes and swings to remain on said public resort and public school playgrounds for several weeks; and allowed said public resort and public school playgrounds for several weeks to be used as a playground for more than five hundred children, ranging from six to fifteen years of age, without said apparatus being guarded or fenced off in any manner whatsoever, and without any supervisors or supervisor or other precaution taken to protect said children, or any of them, lawfully on said grounds from being injured and killed by said apparatus; all of which was well known to defendant, its officers, agents, and servants, or in the exercise of ordinary diligence should have been known to it and them.

That on the first day of December A. D., 1920, one John William Anderson, deceased—only son of the widowed plaintiff herein—when he was thirteen years and three months of age, and when in good and robust health, and when lawfully on said public resort and public school playgrounds, and under legal compulsion to attend said school, and when lawfully in the vicinity of said apparatus, with other children, innocently yielded to the instincts of childhood and was sliding, running, and playing on and about said apparatus, as more than five hundred children were wont to do, and were reasonably likely to do, was struck in the head and neck by one of said heavy, iron-bound, or iron-mounted plank swing seats, and mortally wounded thereby; and then and there by reason of the said wilful carelessness, negligence, and default of the defendant, acting through its officers, agents, and servants, as aforesaid, was so mortally wounded that within a few minutes thereafter, and without regaining consciousness, he languished and died of the direct and immediate result of having been struck by one of the heavy swing seats as aforesaid, all without any fault or negligence of this plaintiff, or without any fault or negligence of the said William Anderson, deceased, when his age and surroundings are considered, but was wholly caused by the presence on said public resort and public school playgrounds of said nuisance, consisting of said chutes and swings, the presence of which, upon said public resort and public school playgrounds the defendant was in duty bound to take notice and abate; but on the contrary allowed and permitted the same to remain on said pub-

lic resort and public school playgrounds for said several weeks, prior to and on said first day of December A. D. 1920, to the great risk, hazard, and mortal danger of all of the more than five hundred children playing on said public resort and public school playgrounds as aforesaid.

That plaintiff is a widow forty-two years of age, with three living daughters, aged respectively, fifteen, nine, and six years, who are wholly dependent upon plaintiff for their education, care, and support; that her son the said John William Anderson, deceased, who was killed as aforesaid, in addition to his school and domestic tasks, was at the time of his death and for sometime prior thereto, earning and contributing about twenty dollars per month toward the support of himself, the plaintiff, and his three sisters, by working a portion of the time for a merchant; and was likely to be and already was the sole person upon which plaintiff depended and was likely to depend for assistance for her own and her daughters' support.

The demand for judgment was in the sum of $25,000 damages, and $200 additional for burial expenses and fees for physician services expended by the plaintiff in caring for the injuries of her son.

To the complaint the defendant interposed a demurrer. The ground of the demurrer was that the complaint did not state sufficient facts to constitute a cause of action. The trial court made an order sustaining the demurrer from which defendant appeals. The theory of the demurrer, if we correctly understand its import, is that the schools of the city of Fargo are a part of the educational system of the state of North Dakota, and, as such, are a governmental agency of the state, and that like the state, they are not subject to be sued for a wrongful tortious act, occurring in connection with the exercise of their governmental functions. The schools of Fargo are organized and conducted under a special act of March 4th, 1885, as amended by an act of February 2nd, 1915. All of the schools of Fargo are managed and directed by the board of education. This board has power to organize, establish, and maintain such and as many schools in the city as it may deem requisite and expedient and to change and discontinue any of the same.

Section 18 of the act defines the powers and duties of the board, which provide as follows:

Section 18. The said board of education shall have power, and it shall be their duty:

1. To organize, establish, and maintain such and so many schools in said city as they may deem requisite and expedient, and to change and discontinue the same.

2. To purchase, sell, exchange, and lease houses or rooms for school purposes, lots or sites for schoolhouses, and to fence and improve them as they may deem proper.

3. Upon such lots or sites as are now owned or leased, or as may hereafter be purchased, owned, or leased for school purposes, to build, enlarge, alter, improve, and repair schoolhouses, outhouses and appurtenances as they may deem advisable.

4. To provide, sell, exchange, improve, and repair school apparatus, books for indigent pupils, furniture and appendages, and to provide fuel and other needful supplies for the schools.

5. To have the custody and safe keeping of the schoolhouses, outhouses, books, furniture and appurtenances, and to see that the ordinances of the mayor and city council in relation thereto are observed and enforced.

6. To contract with license, and employ all teachers in said schools, and, for good cause, to remove them.

7. To pay the wages of teachers out of the moneys appropriated and provided by law for the support of common schools in said city, so far as the same shall be sufficient, and the residue thereof from the moneys authorized by this act to be raised.

8. To defray the necessary and contingent expenses of the board, including the compensation of the secretary.

9. To have in all respects the control and management of the common schools of said city, and from time to time to adopt, alter, modify, and repeal as they may deem expedient, rules and regulations for their organization, grading, government, and instruction, or the reception of pupils and their transfer from one school to another, and generally for their good order, prosperity, and utility.

Subdivision 4 of § 18 of the act, confers upon the board of education power, to purchase all the needful supplies for the schools and all apparatus, furniture, and appendages; this power is broad enough to authorize the board to purchase all needful supplies for use in maintaining the health of the pupils and for their proper physical development. It may provide for apparatus to be used in manual training

which develops the intellect and skill of the pupil, and as well contributes to his physical improvement. So likewise may apparatus be provided for track or football, or basketball; and for smaller pupils, swings, teeter boards, and much other apparatus may be provided, all designed to improve the pupil in some respect. All such apparatus and much more, not necessary here to mention, the board is authorized to provide for use in the schools. All such apparatus is considered approximately as much a part of the needful supplies of schools as are the desks or other needful furniture. It constitutes a necessary part and portion of the school system. The school would not be kept in needful supplies, unless such were a part of them. Hence, when the board of education provides them, it is acting in a purely governmental capacity. In reality it is a part of the principal duties of the board to provide such needful and necessary apparatus. If it be conceded that the board in furnishing and installing such apparatus and needful supplies in a school or on the school grounds, is acting in a governmental capacity— and we think this must be conceded—it cannot be charged with the establishing and maintaining of a nuisance, in that respect, in the absence of a permissive statute to that effect and there is no such statute in this state. Neither is it liable in an action of negligence if the act of negligence grew out of some act or acts of the board while acting in a governmental capacity. It is true, as appears from appellant's brief, that the New York supreme court appellate division, under an act very similar to the special act here under consideration, arrived at a contrary conclusion in McCarton v. New York, 149 App. Div. 516, 133 N. Y. Supp. 941. It in substance there held that if the board of education maintained a flag pole which was unfit for the purpose, in that it was rotten and never should have been selected for such use, and which was in a position to endanger the life of those lawfully in the vicinity of the school building, with notice as alleged, that it was in an unsafe condition, it was liable upon the the theory of having erected or of maintaining a nuisance, depending upon whether the original erection was unsafe, or the flag pole was maintained with actual knowledge that it was in a dangerous condition, or upon the theory of negligence, depending upon its failure to perform its statutory duty to provide for "prompt and efficient" repairs. In the same case the court in its opinion cited other New York authority in support of its decision.

However, in reaching our conclusion, we do not feel that we can follow the New York authority. To do so, we think, would result in placing a school corporation, having a board of education, and perhaps every school corporation, in such a position that actions for erecting or maintaining a nuisance or for negligence or for damages could be brought with as much ease against them as against the ordinary business corporation, and if this would be the result, boards of education or school officers would have no immunity; and from fear and anticipation of such suits, perhaps would fail to exercise the functions incumbent upon them in their governmental capacity, and this might very frequently result largely in failure of administration of school affairs. We think the safest rule is that where such a board is acting in a governmental capacity in the discharge of its lawful duties and its acts are such as are within its powers as defined by law, that it should be immune from all forms of action against it, except such as are by law permitted.

Appellant has cited several decisions from the state of Washington in support of her position, among which may be mentioned: Bruenn v. North Yakima School Dist. 101 Wash. 374, 172 Pac. 569, 19 N. C. C. A. 857; Holt v. School Dist., 102 Wash. 442, 173 Pac. 335; Kelley v. School Dist., 102 Wash. 343, 173 Pac. 333; Howard v. Tacoma School Dist., 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792; Stovall v. School Dist., 110 Wash. 97, 9 A.L.R. 908, 188 Pac. 12; Redfield v. School Dist., 48 Wash. 95, 92 Pac. 770. These cases do support the theory that a board of education may be sued for its negligence in the discharge of its functions and duties, but what we have said above with reference to New York cases is sufficient to dispose of these and other citations of like import by the appellant.

This brings us to the consideration of the claim of appellant that the schools of Fargo constitute a corporation, capable of suing and being sued, having a corporate seal and other attributes of the ordinary business corporation. We think its right to sue or be sued has reference to suits arising on contract or involving title of property, or suits authorized by law.

It is not necessary to the decision of this case, to distinguish between the rule of nonliability of a school corporation and that applied to municipal corporations proper, such as cities or incorporated villages,

which are quite frequently liable for acts of malfeasance or neglect of duty on the part of its officers and agents, as for instance, their negligence in not keeping streets or sidewalks in repair. We, therefore. refrain from entering upon any discussion in this respect.

Before concluding this opinion, it may be well to observe that the complaint, after setting out the allegations, with reference to negligence and the construction and the maintenance of a nuisance, which we have largely above set forth, also alleged the following: "All of which was well known to defendant, its officers, agents, and servants, or in the exercise of ordinary diligence should have been known to it and them." This is an attempt to plead knowledge on the part of the board of education. It states, however, no facts showing that the board had any such knowledge, and amounts to nothing more than a mere legal conclusion; but if facts were stated which showed knowledge, we still do not think the board of education would be liable if it acted in a governmental capacity in constructing the apparatus in question, and we have concluded it did; neither do we regard it as material in this case that the apparatus which caused the injury was not a part of the original plan of the school building, assuming that it was not a part thereof. The board in providing the apparatus, as we have held, was acting within its governmental capacity, and for that reason is protected from liability.

It is regrettable, indeed, that William Anderson lost his life in the circumstances mentioned; that his mother has sustained an irreparable loss, and that while it is a maxim of law that for every wrong there is a remedy, that maxim does not seem to hold true in this and similar cases. While the plaintiff's loss is a real one and the damages suffered by her, no doubt substantial, the law affords her no remedy. The law, in effect says to her: You alone must bear this burden; that even if substantial damages might in some small measure assuage the great burden imposed upon you, through no fault of yours, nevertheless, in order to protect the public, you, widowed though you be, must bear the burden alone.

We hold that the demurrer is sufficient, and that the ground of the demurrer, that the complaint did not state facts sufficient to constitute a cause of action, is true. The order sustaining the demurrer is affirmed. The appellant is entitled to costs and disbursements on appeal.

CHRISTIANSON, J. (concurring). I concur in an affirmance on the ground stated in ¶ 3 of the syllabus, namely, that the defendant, school corporation, in providing swings and other playground apparatus was engaged in a governmental enterprise. In other words, I believe the case falls within the rule announced in Moulton v. Fargo, 39 N. D. 502, L.R.A.1918D, 1108, 167 N. W. 717. It is a well-settled common-law rule "that no private action can be maintained against a municipal corporation for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no pecuniary profit." And "as respects what are sometimes called 'quasi municipal corporations' such as counties, townships, and school districts, this is the rule everywhere, without exception." Snider v. St. Paul, 51 Minn. 466, 18 L.R.A. 151, 53 N. W. 763. This rule, as regards a quasi municipal corporation, was recognized and enforced in the early history of this state. Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092. The rule as thus recognized and enforced has never been departed from since. If the rule is wrong the legislature has ample power to change it. It is the duty of the courts to enforce the law as it exists.

BIRDZELL, Ch. J., and ROBINSON, J., concur.

BRONSON, J. (specially concurring). I concur in affirmance of the order. I agree that the defendant, upon the facts alleged, was engaged in the performance of a governmental function. While so engaged, under well settled principles of law, recognized and followed in this state, the defendant was not liable for its negligence. Montain v. Fargo, 38 N. D. 432, L.R.A.1918C, 600, 166 N. W. 416, Ann. Cas. 1918D, 826; Moulton v. Fargo, 39 N. D. 502, L.R.A.1918D, 1108, 167 N. W. 717; Snider v. St. Paul, 51 Minn. 466, 18 L.R.A. 151, 53 N. W. 763; notes in 37 L.R.A. 301 and 49 L.R.A.(N.S.) 1026. If it be desirable to change this well-settled principle of law, the complaint should be addressed to the legislature for legislative enactment. Plumbing Supply Co. v. Board of Education, 32 S. D. 270, 142 N. W. 1131; notes in 37 L.R.A. 301 and 49 L.R.A.(N.S.) 1026.