## BINGHAM v. BOARD OF EDUCATION OF OGDEN CITY

No. 7468. Decided October 25, 1950. (223 P. 2d 423)

(Rehearing denied January 2, 1951.)

See 56 C. J., Schools and School Districts, Sec. 621. Immunity from liability of schools as quasi municipal corporations, 160 A. L. R., 1. See, also, 47 Am. Jur., 334.

*Thatcher & Young,* Ogden, *William H. Bowman,* Pueblo, Colorado, for appellant.

*Wade M. Johnson,* Ogden, for respondent.

LATIMER, Justice.

This is an action brought by Jack T. Bingham, individually and as guardian ad litem of his minor daughter, Marilyn Bingham, against the Board of Education of Ogden City, to recover damages flowing from an accident which injured Marilyn Bingham while she was playing on the school grounds of the Central Junior High School, in Ogden, Utah. The complaint attempts to state two causes of action; the first for injuries received by the minor, and the second for reimbursement for hospital and medical expenses paid by the father. A general demurrer to both causes of action was sustained by the lower court, the plaintiffs elected to stand on the allegations of the complaint, and the action was therefore dismissed. On this appeal the parties are referred to as they appeared in the court below.

The material facts pleaded in the complaint are as follows: That the defendant is a body corporate and owns

the premises upon which the accident occurred; that on the day of the accident, and for some time prior thereto, the defendant maintained an incinerator for the purpose of burning old books, papers, debris, and other rubbish collected on the school premises; that these materials were deposited in the incinerator located in an unguarded place adjacent to a playground area and were burned at regular periods; that hot debris, embers and ashes were discharged or removed and allowed to accumulate over an area of several feet; that on the day in question the plaintiff, Marilyn Bingham, a child of the age of three years, was riding a tricycle and fell into the burning embers, receiving severe injuries; and that the operation of the incinerator in the dangerous and hazardous manner alleged constituted a nuisance.

The Board of Education of Ogden City is an agency of the State of Utah, created by the legislature. Article X, Section 1, of the Constitution requires the legislature to provide for the establishment and maintenance of a public school system. Section 2 of Article X defines what shall constitute the public school system, and Section 6 of the same Article separates school systems in cities of the first and second class from other school systems. Section 7, of Article X provide that "All public School Funds shall be guaranteed by the State against loss or diversion." In accordance with these requirements, the legislature of the State enacted legislation setting up school districts, creating boards of education, prescribing the functions and duties of such boards and granted to them the necessary powers and authority to carry out their required duties. (See Title 75, U. C. A. 1943.)

The legislative enactments pertinent to the instant case are those which provide that separate boards of education shall be created in cities of the first and second class, Section 75—9—5, U. C. A. 1943; that each board of education shall be a body corporate, that it may sue and be sued,

and may hold, lease, sell and convey real and personal property, Section 75—9—8, U. C. A. 1943; and that, among other powers the boards shall have power and authority to purchase and sell "schoolhouse sites and improvements thereon, to construct and erect school buildings and to furnish the same, to establish, locate and maintain * * * schools * * * do all things needful for the maintenance, prosperity and success of the schools, and the promotion of education * * * and make and enforce all needful rules and regulations for the control and management of the public schools of the district." Section 75—11—20, U. C. A. 1943.

It frequently happens that the same act or omission may constitute negligence, and, at the time time, give rise to a nuisance. At times it is most difficult to determine whether an alleged state of facts establishes a nuisance or shows merely a lack of due care. Whether or not the allegations of this complaint picture a condition which, in law, is a nuisance or show merely negligent conduct, is a question not free from difficulty. Accordingly, we dispose of the liability of the school board regardless of the characterization of the negligence.

If the facts alleged in this action show ordinary negligence then, under previous statements made by this court, it would appear the demurrer was properly sustained. In the case of *Woodcock* v. *Board of Education of Salt Lake City*, 55 Utah 458, 187 P. 181, this court made mention of the lack of liability of a board of education for tort actions. There, the issue was the obligation of a school district to satisfy an award of the Industrial Commission for injuries suffered by an employed teacher. The particular principle now involved was not in issue in that case, but this court recognized the general rule limiting the board's tort liability where, as in this state, there is no statute imposing liability. The court said, 55 Utah at page 463, 187 Pac. at page 183:

"The general law of this jurisdiction, as in most other jurisdictions, does not authorize actions for damages for personal injuries against school districts. School districts are corporations with limited powers, and act merely on behalf of the state in discharging the duty of educating the children of school age in the public schools created by general laws."

All jurisdictions have not followed the general rule mentioned in that case. The courts of the state of New York have adopted a somewhat different principle. See Annotation 160 A. L. R. 7, pp. 42, 76-81, and cases cited in note 5, page 76. In that jurisdiction the courts have made a distinction between negligence which may be attributed to a school district or school board itself, such as the non-performance of a duty imposed by law upon the district or board, and negligence which may be attributed only to an officer, agent or employee, and they have held that the rule of non-liability applies only in the latter situation.

The New York rule was considered and discussed by the Supreme Court of North Dakota in the case of *Anderson* v. *Board of Education*, 49 N. D. 181, 190 N. W. 807, 810. There the plaintiff brought action against the board for damages for the death of her son, caused by the negligence of the defendant in the construction and maintenance upon the school playground of certain chutes and swings. One of the heavy swings struck deceased in the head causing his death. The court said:

"However, in reaching our conclusion, we do not feel that we can follow the New York authority. To do so, we think, would result in placing a school corporation, having a board of education, and perhaps every school corporation, in such a position that actions for erecting or maintaining a nuisance or for negligence or for damages could be brought with as much ease against them as against the ordinary business corporation, and, if this would be the result, boards of education or school officers would have no immunity, and from fear and anticipation of such suits perhaps would fail to exercise the functions incumbent upon them in their governmental capacity, and this might very frequently result largely in failure of administration of school affairs. We think the safest rule is that, where such a board is acting in a governmental capacity in the discharge of its lawful duties, and its acts are such as are within its powers as defined by law, it should be immune from all forms of action against it, except such as are by law permitted."

While law writers, editors and judges have criticized and disapproved the foregoing doctrine of governmental immunity as illogical and unjust, the weight of precedent of decided cases support the general rule and we prefer not to disregard a principle so well established without statutory authority. We, therefore, adopt the rule of the majority and hold that school boards cannot be held liable for ordinary negligent acts.

Plaintiffs, however, contend that even if we follow the general rule they still have alleged a cause of action, as immunity from tort liability cannot be claimed when the act complained of reaches the level of a nuisance.

Since many of the cases relied on by the plaintiffs deal with the liability of municipal corporations, we point out that the authorities seem to make a distinction between municipal corporations and what are termed "quasi-municipal" corporations. This distinction is better understood when consideration is given to the fact that school boards are created exclusively for school purposes and are mere agencies of the state established for the sole purpose of administering a system of public education for which they receive no private or corporate benefit; and that, as to tort liability, such agencies or authorities occupy a status different from that of municipal corporations which ordinarily have a dual character and which may exercise proprietary as well as governmental functions. *McQuillin on Municipal Corporations,* explains the distinctions as follows (Sec. 2775, 2nd Ed.) :

"* * * it is pertinent to state here that there is a distinction between municipal corporations proper and quasi-municipal corporations concerning liability for torts, and that the general rule is that the latter is not liable for torts unless allowed by statute. * * *

"The immunity from liability of quasi-public corporations is generally placed upon the ground of their involuntary and public character. They are usually treated as public or state agencies, and their duties are ordinarily wholly governmental. They exercise the greater part of their func-

tions as agencies of the state merely, and are created for purposes of public policy, and hence the general rule that they are not responsible for the neglect of duties enjoined on them, unless the action is given by statute. On the other hand, it is recognized that the municipal corporation proper has functions which are performed by it not as a mere agent of the state, but in its capacity as a corporation serving alone the local inhabitants. If the city should be regarded as a state agency at all times, which is frequently asserted without qualification by courts, there would exist no logical ground for holding it liable for damages due to negligence, since in no instance is a state held liable under the general principles of law."

The Supreme Court of Iowa, in the case of *Snethen* v. *Harrison County*, 172 Iowa 81, 152 N. W. 12, 13, refused to declare a county liable for negligence in the performance of its governmental functions. There the court based its reasoning on the distinction between the involuntary and voluntary nature of political and territorial divisions of the state, and said:

"Counties, unlike cities and incorporated towns, are not, as a rule, held liable for torts committed by them, so long as they are acting within the scope of their governmental powers. They are quasi municipal corporations engaged in the performance of governmental functions, and are not responsible for the neglect of duties enjoined upon them, in the absence of a statute giving a right of action."

In *Carlo* v. *School District of City of Scranton*, 319 Pa. 417, 179 A. 561, 562, the Supreme Court of Pennsylvania pointed out a difference between municipalities and school districts. We quote from that decision:

"*Paraska* v. *Scranton*, 313 Pa. 227, 169 A. 434, is urged by plaintiff as decisive in his favor. In that case we held that a municipal corporation was not immune from liability for injuries caused by its negligence in the maintenance of a public playground. There is a distinction between the liability of a municipal corporation for the negligence of its employees and the liability of an agency of the Commonwealth whose sole purpose is the maintenance and support of the schools within its territorial division. In *Briegel* v. *City of Philadelphia*, [135 Pa. 451, 19 A. 1038] supra, this court said: 'Under the Pensylvania statute, school districts are agencies of the commonwealth for a special and limited purpose, with no funds under their control, but public moneys devoted to a specific charity, and not divertible, even indirectly, to any other use. This purpose might be entirely destroyed by holding the funds liable for the consequences of torts by the officers or servants of the school district, and therefore such liability cannot be sustained."

The reasons given by most courts in holding boards of education immune from liability for negligence center around the proposition that school boards act in connection with public education as agents or instrumentalities of the state, in the performance of a governmental function, and consequently they partake of the state's sovereignty with respect to tort liability. If this reason be good to relieve boards of education from tort liability, then it should apply with equal force in cases involving personal injury caused by nuisances. The latter may involve more aggravated or continuous acts, but the right to recover should not be determined by the gradation of negligence or by the adjectives used in the complaint. If the strictness of the rule is to be relaxed in cases of nuisance, and if the schools are to be stripped of immunity, the stripping process should be by legislative enactment and not by court decree.

There have been a number of jurisdictions in which the liability of a school board for maintaining a nuisance has been adjudicated. We refer to a limited number of these. In *Braun et al.* v. *Trustees of Victoria Independent School Dist.*, Tex. Civ. App., 114 S. W. 2d 947, 950, the Court of Civil Appeals of Texas affirmed the trial court's decision sustaining a demurrer to a complaint alleging that the school district maintained a nuisance by allowing a tree to grow near to the steps of the school building and by pruning the tree so that its limbs had sharp points which were dangerous and which injured a school child when she was pushed from the steps by other children. The court said:

"In the case of *McVey* v. *City of Houston*, 273 S. W. 313, the Galveston Court of Civil Appeals held that even where a city had taken over its schools, no cause of action would lie either against the school trustees or the city for an injury sustained by a pupil attending school resulting from negligence in not keeping the school building in proper repair. In this opinion the authorities in many other states are discussed and it would add nothing for us to repeat here this discussion. Appellant attempts to

distinguish his case from the *McVey Case* by stating that his case is a nuisance case and not a negligence case. In passing upon the liability of an independent school district for personal injuries suffered by a pupil in attendance upon a free public school, no distinction can be made between nuisance and negligence. What is the difference in alleging that the agents of the school district were negligent in maintaining the ligustrum tree under all the circumstances and in alleging that under all the circumstances the ligustrum tree was a nuisance and that the agents of the school were negligent in maintaining and not abating the nuisance? The question of a nuisance becomes relevant when, by the maintenance of a nuisance, private property or property rights have been involved."

In Minnesota, in the case of *Mokovich* v. *Independent School Dist. of Virginia,* 177 Minn. 446, 225 N. W. 292, 293, plaintiff sued to recover for damages resulting from the alleged negligence of the school district in allowing its agents to use unslaked lime in marking a football field. Plaintiff lost the sight of one of his eyes when he was thrown to the ground while playing in a game. The court discussed the question of nuisance as follows:

"In passing upon the question of liability of counties, towns, and school districts for torts, in numerous cases in this court, no distinction has been made between negligence and nuisance, except where the tort caused invasion or injury to private property or property rights. * * * The rule of non-liability has been applied in cases where the facts disclosed a nuisance as clearly as in the present case. The rule is placed on the ground that such corporations are not liable for negligence or other wrongful acts or omissions of their officers and agents in performing governmental functions, except in cases of defects in city and village streets, and in cases of invasion or injury to property or property rights. The rule applies, not to negligence alone, but to all torts, including a nuisance. (Citing cases.)

"The question was considered in *Bojko* v. *City of Minneapolis* [154 Minn. 167, 191 N. W. 399, 400], where this statement is made:

" 'It is immaterial in what language the failure to perform the governmental function or authority be couched in the complaint; the rule of law on the subject cannot thus be changed. And the fact that the complaint in this action alleges that the failure of defendant to light the street in question resulted in creating a public uisance does not materially change the legal aspect of the question. The alleged failure had relation to a governmental function, a failure to perform which is not actionable whether it be termed a nuisance or mere negligence.' "

In *Odill* v. *Maury County,* 175 Tenn. 550, 136 S. W. 2d 500, 501, plaintiff sought to recover damages for personal

injuries received by her when she fell from the top of an unguarded ramp which was near the playground on school property. The Supreme Court of Tennessee stated the rule as follows:

"In the present case the county was acting within its delegated power when it constructed this school building; and even if it be conceded that the opening into which plaintiff fell constituted a nuisance, a question unnecessary for this court to determine, the defendant is no more liable than was the county in *Tyler* v. *Obion County et al.* [171 Tenn. 550, 106 S. W. 2d 548] supra, where the county committed a nuisance by dumping six or seven large piles of gravel or rock in the middle of the road and left them there overnight."

The Supreme Court of Michigan, in the case of *Daniels* v. *Board of Education of City of Grand Rapids et al.,* 191 Mich. 339, 158 N. W. 23, 28, passed on the board's liability for maintaining a nuisance. The court announced the rule to be:

"In the second count of plaintiff's declaration it is alleged that the structure and stairway with its low railing enclosing the 'well-hole, or elevator shaft,' became and remained a dangerous nuisance. It is contended by his counsel that applying this name and view to the alleged facts defendants are liable under the principle that a municipal corporation may not construct or maintain a nuisance in the street nor upon its property to the damage of another lawfully in the street or upon its premises, and authorities are cited to sustain this doctrine. * * *

"We are unable to give what was said in that general discussion (on nuisance) the application to this case contended for, and cannot discover in it any intent to change or modify by resort to the rules governing the law of nuisance the well-settled general principle that school boards, in their quasi corporate capacity as governmental agencies, are exempt from corporate liability for faulty construction or want of repair of their school buildings."

The maintenance of a system of public schools within the state is a matter of statewide interest. Boards of education are created by the legislature to perform the function of educating the children residing in the state. As agencies of the state, their activities are restricted to the duties and powers specifically granted to them. They act without profit, are supported by taxes, and act solely in a governmental capacity. The legislature has not imposed responsibility upon them and this court cannot adopt a refined distinction between two torts, one sounding in mere

negligence and one sounding in aggravated negligence and by such a judicial construction relieve the school board in one instance and impose liability in the other.

In the instant case, disposing of papers, rubbish and debris which collect daily on schoolgrounds and in classrooms is reasonably within the scope of the duties imposed upon boards of education by the leg-islature. The burning of such rubbish and debris is an essential part of the sanitation of the school building and grounds. Since the acts complained of were committed in the performance of a governmental function, the rule of immunity applies, even though the firing of the incin-erator was performed in such a negligent manner as may be characterized as maintaning a nuisance. We are aware that the allegations of the complaint portray a tragic and unfortunate case, and we are not without sympathy for the little girl and her father. However, under our constitution, the power to make departments of the state respond in damages for torts rests with the legislature, and without legislative enactment we are unable to impose any liability or obligation upon school districts.

The decision of the trial court is affirmed, costs to respondent.

PRATT, C. J., and McDONOUGH, J., concur.

WADE, Justice (dissenting).

Generally, I concur with the views expressed by Mr. Justice Wolfe. I am inclined to believe that the entire doctrine of sovereign immunity is inconsistent with jus-tice and correct principles and on that ground I do not agree with the decision in the prevailing opinion. How-ever, in this case we are limited in our decision to the con-trolling facts here presented. Here we are concernd only with a case of negligence and as far as cases of this kind are concerned, I think that the doctrine of immunity

has no application. There have probably been doctrines announced in the past by this court under which the plaintiff in this case would be entitled to succeed without overruling the entire doctrine of sovereign immunity. I do not think we are now in a position to determine the limits or extent to which we would go in other types of cases.

There may be situations where public employees, and officers are really looking after their own interests although ostensibly acting for the public where it would not be in the public interests to make the public liable for their negligence. Certaintly there are cases where the doctrine of sovereign immunity is applicable to cases involving property rights as well as to liability for personal injuries, where the actions of interested parties have been influenced by court decisions. I therefore express no opinion as to how far we should overrule the doctrine. But I do think that it should be held to have no application to the facts of this case.

WOLFE, Justice.

I dissent.

The court's opinion states:

"While law writers, editors and judges have criticized and disapproved the foregoing doctrine of governmental immunity as illogical and unjust, the weight of precedent of decided cases supports the general rule and we prefer not to disregard a principle so well established without statutory authority. We, therefore, adopt the rule of the majority and hold that school boards cannot be held liable for ordinary negligent acts."

I prefer to regard said principle for the purpose of overruling it. I would not wait for the dim distant future in never-never land when the legislature may act. During my six years on the district bench and sixteen years on this bench, the principle of sovereign immunity and its cousin, non-liability of charitable institutions, specifically of hospitals, has come before this court at various times. We, as well as other courts of last resort, in various jurisdictions

have had to face this problem of the principle of non-liability of the state and of municipal and quasi-municipal corporations which are said to have taken on the cloak of sovereignty because of their exercise of governmental functions which, it is claimed, insulates them from the doctrine of respondeat superior. We have recognized that the state, which permits an action for damages against its citizens for injuries inflicted by their torts and the torts of their servants committed in the course of or in pursuance of the master's business, should not shield itself behind the immoral and indefensible doctrine that "the king [sovereign] can do no wrong"; that neither should the soverign take refuge in the doctrine that its own agencies, the courts, must not be allowed to render judgment against their creator. This court, as have other jurisdictions, has resorted to various devices to circumvent the injustices consequent on sovereign immunity.

One of these devices was to draw a distinction between supposedly governmental and proprietary functions. In my concurring opinion in the case of *Lehi City* v. *Meiling, City Recorder,* 87 Utah 237, at page 270, 48 P. 2d 530, at page 545, I attempted to point out that at bottom the distinction was traditional rather than natural or characteristic and that the distinction in the rapid growth of welfare for which cities engaged in proprietary functions as distinguished from protective or governmental functions, was fast fading out because of the increasing impracticability of logically maintaining them. Another device was to call aggravated cases of negligence, nuisances and hold that nuisances—those situations where there was a continuing or recurrent negligence, containing definite and palpable potentialities for harm—were not subject to the rule of non-liability. The anxiety to give the injured party a remedy for prolonged gross and flagrant negligence by the negligent actor had its roots in the belief that justice had not been served in permitting the injured party to bear

the full brunt of the negligently inflicted injury. But the court failed to come to grips with the real problem. I agree with the prevailing opinion that if the

"reasons given by most courts in holding boards of education immune from liability for negligence center around the proposition that school boards act in conection with public education as agents or instrumentalities of the estate, in the performance of a governmental function, and consequently they partake of the state's sovereignty with respect to tort liability * * be good to relieve boards of education from tort liability, then it should apply with equal force in cases involving personal injury caused by nuisances." I agree that "the right to recover should not be determined by the graduation of negligence or by the adjectives used in the complaint."

But I do not agree that

"If the strictness of the rule is to be relaxed in cases of nuisance, and if the schools are to be stripped of immunity, the stripping process should be by legislative enactment and not by court decree."

In *Husband* v. *Salt Lake City*, 92 Utah 449, page 469, 69 P. 2d 491, page 500, I stated:

"I do not think that this sprinkling wagon being operated along a park pathway in order to settle the dust is a nuisance in the legal sense.

*       *       *       *       *       *

"But I am willing to hold the city liable on the theory of respondeat superior for the negligence of the driver of this sprinkling wagon. I think the decisions have gone to ridiculous lengths in giving municipalities immunity from the negligence of their employees on the ground that the work in which such employees were engaged was in pursuance of governmental purpose. In the case of *Lehi City* v. *Meiling*, 87 Utah 237, 48 P. 2d 530, I had something to say about the continual growth in the extent and kind of municipal functions and the obscurity of the line between governmental and proprietary functions. I see no difference essentially in the conduct of a municipal park and a municipal bathhouse, golf club, play ground, or dance hall. As pointed out in the writer's opinion in the Lehi City Case, these municipal activities represent an expansion of municipal functions. Even the fact that fees are charged in some and not in others may not work any destruction in the essential nature of the undertakings. They are all recreational as distinguished from protective. I have no objection to including civic recreational projects as governmental, but I do not think the city should be insulated against responsibility for negligence of an employee on civic recreational undertakings. Moreover, there is such a matter as treating a particular activity of a municipality as governmental for one purpose and corporate or proprietary for another purpose. *Brush* v.

*Com'r of Internal Revenue* (Oct. 1936) [300 U. S. 352,] 57 S. Ct. 495, 81 L. Ed. 691, 108 A. L. R. 1428.

"I am in favor of restricting municipal immunity for the negligence of its employees while engaged in the city's business to that committed in the pursuit of actual protection of persons and property or preserving the peace of the community or some other police duty which it exercises as an agency of the state. The doctrine originated on the theory that the city was an agency of the state in its function of preserving the peace and protecting persons and property, and since the state could not be sued for negligence of its employees in performing such functions, neither should the agency be required to respond when its servant so engaged was guilty of negligence. I have some question about the soundness of the original doctrine, but as then restricted, it did not produce the unfairness which now ensues because of the greater and greater expansion of municipal activities construed to be for governmental purposes."

I am now of the opinion that we should judicially strike the ax at the very roots of this tree of governmental immunity grown from a by-gone time in which it may have been necessary as a part of public policy to protect the state, municipal corporations and quasi-municipal corporations including school boards, from liability for torts, few of which were committed by the members personally. In the Husband case I expressed myself as willing to adhere to the doctrine of municipal immunity to the extent of applying it to negilgence of the city's "employees while engaged in the city's business to that committed in the pursuit of actual protection of persons and property or preserving the peace of the community or some other police duty which it exercises as an agency of the state." I must now recede from my position there taken. I see no necessity in modern times for exempting even the state.

In *Niblock* v. *Salt Lake City*, 100 Utah 573, 111 P. 2d 800, 804, in a concurring opinion, I stated:

"In the case of *Husband* v. *Salt Lake City*, 92 Utah 449, 69 P. 2d 491, I expressed the opinion that municipal immunity for the negligence of its employees had been extended too far. The doctrine cannot be defended in any case on ethical grounds. The state should set the example by responding in damages for injury caused by the negligence of its servants while they are about its business. It follows then, that it should permit its

courts to be opened to the inquiry as to whether it proximately caused the plaintiff's injury.

"Governmental immunity is granted on the old theory that 'the king can do no wrong' or, on the better circumstanced morality, that the sovereign by its very nature cannot be sued because the sovereignty implies something which cannot be reached by suit in and through the very agencies which the sovereign itself creates. One cannot bring into court the creator of the court itself. But neither of these theories suffices in this modern day. See 23 Mich. L. Rev. 325; *Hoggard* v. *City of Richmond*, 172 Va. 145, 200 S. E. 610, 120 A. L. R. [1368] 1376.

"Realistically speaking, the state should be free from the vexatious suits based on fictitious grounds which might spring into abundance were the immunity removed. Therefore, the matter of lifting immunity is, perhaps, properly the matter of legislation. But it behooves the courts judicially not to extend the doctrine. * * *

"Logically, if a city's immunity is based on the fact that it exercised sovereign powers, as pointed out in 120 A. L. R. 1376, at p. 1377, the doctrine 'constitutes an impediment to suing the soverign at all, and would apply as well to proprietary functions as to those of a governmental character.'

"Logically, also, there is no reason why a line should be drawn between some governmental functions and others. But at least it has the virtue of mitigating the injustices of the anachronous doctrine of governmental immunity.

"However, since the decisions of this court have steadfastly refused to so limit the doctrine, the prevailing rule must continue to be the law until the Legislature sees fit to change it."

There is force to the argument that since we have recognized for a long time the rule of sovereign immunity in this jurisdiction, we should now leave it to the legislature to change the rule. There is much to be said for that in the name of stability. But no rule of property is here involved. No rights of immunity have vested because of our decisions. The doctrine is of judicial origin and judicial development growing out of the experience of a past age. Assuming that public policy at that time demanded the announcement of the doctrine, such is no longer the case. If the judiciary may develop law one way, it may also discard that law when conditions have changed so no longer to make the rule applicable. Stability in the law is no excuse for continuing a doctrine which admittedly works

injustice when public policy no longer, if it ever did, requires.

That was amply demonstrated in the case of *Sessions* v. *Thomas D. Dee Memorial Hospital Ass'n,* 94 Utah 460, 78 P. 2d 645, 653. It was stated in the concurring opinion in that case: " * *Whatever may have been the reasons assigned by courts for exempting hospitals operated not for profit from the consequences of the doctrine, the real reason was public policy. That funds held in trust for specific charitable purposes should be exempt is another way of saying that it is better public policy to exempt such trust funds. It is not because there is a trust. A trustee for profit is amenable to the doctrine of respondeat superior. Likewise, the theory that such institutions serve the same purpose as a governmental agency is but another guise for holding that it is good public policy to exempt them from the application of the doctrine. It results, therefore, that we but need to determine whether *in this day and age public policy demands that we exempt hospitals from the application of the doctrine.*" (Italics supplied for this case.)

Having in the case of hospitals found the rule of immunity not fitting for the conditions of today, we should by the same token hold the rule of sovereign immunity not applicable for the conditions of today. It is outmoded and does not fit those conditions.

Society has developed systems whereby risks may be pooled and distributed. In consequence, I think the fear that I expressed in the *Niblock case* [100 Utah 573, 111 P. 2d 804] that "the state should be free from the vexatious suits based on fictitious grounds which might spring into abundance were the immunity removed" did not take into account that the risk might be insured. Doubtless, there will be fictitious or unworthy suits and doubtless some of them will be successful. That is one of the pen-

alties we pay for democracy and justice, because justice must be administered by human beings. But greatly out weighing this consideration is the fact that in a period of time children and adults injured by the negligence of servants of the state, or employees of the municipalities or of the school boards, will suffer the injustice of being uncompensated by a society which was too short sighted to see that the rule of sovereign immunity was outmoded and no longer necessary.

I admit that the legislature could and should abolish or modify the doctrine. But we must be realistic. It may be a long time indeed before the enlightened individuals in our society become sufficiently interested and aroused to the injustice of this rule of immunity as to bring that social pressure on the legislature which Mr. Justice HOLMES denominated the "felt necessity of the times." But meanwhile children, not charged in fact or law with the capacity and experience to know danger, and adults not chargeable with contributory negligence, may perish or carry throughout their lives disfigurement and impairment without hope of compensation because they were unlucky enough to have had such damages inflicted by a servant of the state or by a servant of one of its governmental arms.

Certainly we have a duty here. There are cases where we are powerless to act because the remedy lies solely with the legislature. But in those cases where we still have control of a rule or doctrine because it was judge made and developed, we may act. Non-action here and "passing" the problem to the legislature is the easy way out. But I do not think it conscienable for us not to lift our hand when to do so would bring the law up to date and furnish remedies long over due. I opine that if we affirmatively acted, there would be those who would hasten to the legislature to advocate such limitations and conditions that they

thought would be needed to give the state and now exempt bodies opportunity to make timely investigation and to prevent excessive judgments against those puglic bodies.